**NATIONAL CITY BANK, AKRON et al., Appellants,**

**v.**

**EXECUTIVE BUSINESS SYSTEMS, INC., Appellee.**

[Cite as *Natl. City Bank, Akron v. Executive Business
Sys., Inc.* (1990), 67 Ohio App.3d 380.]

Court of Appeals of Ohio,
Summit County.

No. 14319.

Decided April 18, 1990.

*Dean Konstand,* for appellants.
*Leland D. Cole,* for appellee.

CACIOPPO, Presiding Judge.

National City Bank was one of several trustees in a partnership known as Fairlawn Village Partnership ("lessor") who entered into a written lease with Executive Business Systems, Inc. ("Executive"), for the purpose of providing Executive with a retail premises. The executed lease contemplated a five-year term and included a renewal option for one additional five-year period. The lease also included a clause which addressed any period of holdover.

The lease endured the contemplated term and Executive exercised the renewal option. The option term began in June 1981 and ended in June 1986. Executive held over for an additional four months pursuant to the lease.

On November 25, 1987, the lessor brought an action to recover an alleged arrearage in rental payment which accumulated during the optional renewal and holdover periods. That cause was referred for trial to a referee. The referee heard the cause and issued findings of fact and conclusions of law. Despite the lessor's objections, the trial court found that the referee's report contained sufficient findings of fact and conclusions of law to allow the court to make an independent analysis. The trial court adopted the recommendations as the final judgment and order of the court.

The lessor appeals.

### Assignment of Error

"The trial court erred in finding that waiver by implication, equitable estoppel, and laches bar a contractual right without evidence that the party asserting these defenses ever suffered actual material prejudice through a change of position."

The lessor contends that the trial court erred in allowing equitable defenses to bar the lessor from a judgment for breach of contract when Executive suffered no actual material prejudice in paying an inaccurate amount of monthly rent during the lease renewal period. The lessor does not appeal from the trial court's finding as to the holdover period.

The issue before this court concerns the application of the renewal option clause as expressed in the lease to the trial court's factual findings. The lessor argues that the trial court found that the lease terms are clear and unambiguous; that Executive actually owed additional rent pursuant to the lease terms; that the lessor unintentionally failed to adjust the rate as a result of the ineptitude of the lessor's managing company; that Executive did not articulate with certainty any prejudice which arose during the optional renewal period; and, despite these findings, that equitable principles defeat the express lease terms. The lessor does not dispute any of the factual findings. The lessor's alleged error is a matter of law.

Executive contends that the alleged error actually concerns manifest weight of the evidence. To support the trial court's determination, Executive argues that it could have breached the contract during the optional renewal period but did not breach because the lessor did not demand the higher rate. Therefore, Executive suffered material prejudice.

■ This court very recently relied upon *Executive Properties, Inc. v. Warmee* (Dec. 19, 1979), Lorain App. No. 2877, unreported, as authority to determine a cause which was factually similar to the case *sub judice. Frank B. Thomas Trust v. Imperial 400 National* (Mar. 28, 1990), Summit App. No. 14202, unreported, 1990 WL 34872. Where the lease terms expressly make a rental increase automatic, the lease creates an affirmative duty upon the lessee to tender the amount. *Id.*

■ The renewal option clause in the lease to which Executive is a party states in part:

"In the event Lessee has paid the rentals and other charges as herein provided, and kept and performed all the terms, covenants and provisions of this Lease to be kept and performed by the Lessee, and not otherwise, Lessee shall have the right, privilege and option to extend the term of this Lease for one (1) additional five (5) year period(s) upon and under all the terms and provisions hereof, except as to further renewals, and except that the monthly minimum guaranteed rent and parking lot maintenance and lighting for the extended period will be increased by the percentage difference, if any, in the Consumer Price Index (United States City Average—'All Items' figure) issued

monthly by the Bureau of Labor Statistics of the Department of Labor of the United States (or its successor agency) between May, 1976 and May, 1981."

There exists no question as to the amount Executive should have paid during the optional renewal period. The trial court's findings include calculations pursuant to the express lease terms. There exists no question as to Executive having knowledge that the increased amount was due pursuant to the lease terms. A lessee cannot ignore an automatic rental increase because the lessor unintentionally did not demand the increase, have use of the additional sum for the lease term hoping that the lessor intentionally did not demand the increase, and upon demand, avoid payment claiming material prejudice.

The trial court's findings are not consistent with the judgment. The basis upon which the trial court permitted the asserted defenses was the lessor's bad faith. The trial court found that the lessor acted in bad faith after it discovered the inaccurate rental payment. That discovery was found to have occurred in May 1986, and affected the parties' relationship during the holdover period and in negotiation of a new lease. However, the trial court applied the subsequent bad faith, the lessor failing to immediately demand payment of the additional rent upon discovery of that error, to bar the lessor's claim for damages which arose out of the express lease terms.

This court follows the rule developed in *Executive Properties v. Warmee, supra,* in finding that the renewal option created an automatic rental increase. We accept the trial court's factual findings. We find that the trial court erred as a matter of law in applying equitable defenses to bar the contract damages where the trial court found no material prejudice to Executive during the term of the optional renewal.

The assignment of error is sustained.

The judgment of the trial court is affirmed in part and reversed in part. This cause is remanded to the trial court to render a judgment for appellants in the amount of $24,351.23, the difference in rent that the trial court determined in the findings of fact.

*Judgment accordingly.*

CIRIGLIANO and HAYES, JJ., concur.

JERRY L. HAYES, J., of the Portage County Domestic Relations Court, sitting by assignment.