BILL SWAD CHEVROLET, INC., Appellee,

v.

RICART JEEP EAGLE, INC., d.b.a. Ricart Jeep/Eagle Hummer, Appellant.

[Cite as *Bill Swad Chevrolet, Inc. v. Ricart Jeep Eagle, Inc.* (1998), 129 Ohio App.3d 501.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 98AP–18.

Decided Aug. 20, 1998.

*Buckingham, Doolittle & Burroughs, L.L.P., Joel H. Mirman* and *Andrew W. Owen,* for appellee.

*Heinlein & Balcerzak* and *David J. Heinlein,* for appellant.

JOHN C. YOUNG, Judge.

Appellant, Ricart Jeep Eagle, Inc. ("Ricart"), appeals the trial court's December 11, 1997 judgment entry granting appellee, Bill Swad Chevrolet, Inc.'s ("Swad") motion for summary judgment.

Ricart entered into two separate lease agreements with Swad for Ricart's use of an automobile storage lot owned by Swad. The first lease, for the southern half of the lot, commenced June 1, 1994, and expired May 4, 1995. The second lease, for the northern half of the lot, commenced March 24, 1995, and expired February 28, 1996. Both leases contained terms for renewal of the lease by Ricart. The original yearly rental was to be made in payments of $1,500 per month for the first year. The renewal options, incorporated into the original lease agreement, allowed Ricart, by written notice of intent, to renew the leases for additional one-year terms at an increased yearly rental rate payable as $1,575 per month.

At the end of the original lease terms, Ricart did not notify Swad of Ricart's intent to exercise its renewal option. However, Ricart continued to use the lots, or hold over, and paid the renewal rate of $1,575 per month as rent. Swad accepted payment and permitted Ricart to continue in use of the lots. In November 1996, Ricart ceased use of the lots and, as well, ceased rental payments. Swad filed suit seeking to enforce the leases until the expiration of the renewal term. Ricart asserted that its tenancy in holding over created a month-to-month tenancy and that it had never notified Swad of its intent to renew for a year per the terms of the lease. Swad filed a motion for summary judgment, which was granted by the trial court. This appeal follows.

Appellant asserts the following assignments of error:

"Assignment of Error No. 1

"The court erred in determining there were no questions of fact regarding the existence of any oral modifications to the lease contract.

"Assignment of Error No. 2

"The court erred in failing to apply the correct law to its findings of fact.

"Assignment of Error No. 3

"The trial court erred in it[s] failure to apply the proper standard of review for contractual interpretation."

Appellant's assignments of error are interrelated and will be addressed together. On appeal from a granting of summary judgment, our review is *de novo.* Thus, the same standard as articulated in Civ.R. 56 is applied on appeal to determine whether summary judgment was appropriate. *Hounshell v. Am. States Ins. Co.* (1981), 67 Ohio St.2d 427, 433, 21 O.O.3d 267, 271, 424 N.E.2d 311, 314–315. Under Civ.R. 56, summary judgment is appropriate only where the movant demonstrates that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. Civ.R. 56(C); *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 8 O.O.3d 73, 375 N.E.2d 46.

Summary judgment is not to be rendered unless it appears from the evidence that "reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made." Civ.R. 56(C). The nonmoving party is entitled to have the evidence construed most strongly in his or her favor. Civ.R. 56(C); see, also, *Williams v. First United Church of Christ* (1974), 37 Ohio St.2d 150, 66 O.O.2d 311, 309 N.E.2d 924.

Ricart argues that there was a question of material fact as to whether it was a holdover tenant, and as to whether the holdover terms were construed by the court according to the terms of the original lease. Ricart asserts that since he paid a rental amount during the second year higher than that paid during the first year, his tenancy was not in accordance with the original lease terms and his tenancy was transformed into a month-to-month tenancy as opposed to a one-year renewal. Ricart further contends that since it did not assent to a renewal in writing, it cannot be bound by the terms of the renewal options contained in the original lease. We disagree.

■ Ohio law is clear that if the language of a lease is not ambiguous, the courts should give effect to the clearly expressed intent of the parties. *Myers v. E. Ohio Gas* (1977), 51 Ohio St.2d 121, 125, 5 O.O.3d 103, 105–106, 364 N.E.2d 1369, 1372–1373. The language of the leases are clear and unambiguous. The terms of the leases are clearly defined as terms for one year. The yearly rent due is defined as a lump sum payable in monthly installments. As well, the leases each contain a clearly identified renewal option plainly stating that should Ricart indicate in writing his intent to renew the lease for an additional one-year term, the terms of the original lease will remain in effect except that the yearly rental payments will be increased, payable in an amount of $1,575 per month.

Ricart admits that "[a]fter the termination of the written leases, on their respective dates, Ricart paid an increased rental payment in the amount of One Thousand Five Hundred Seventy-five Dollars ($1,575.00)." The amounts paid by Ricart are those agreed to in the original lease; therefore, Ricart's argument that the increased rental amounts paid were not in accord with the lease provisions is not well taken.

■ Where lease terms clearly and expressly make a rental increase automatic upon renewal, the lease creates an affirmative duty upon the lessee to tender the amount. *Natl. City Bank, Akron v. Executive Business Sys., Inc.* (1990), 67 Ohio App.3d 380, 382, 587 N.E.2d 319, 320–321. The record indicates that Ricart, a sophisticated business entity whose attorneys reviewed the contract prior to Ricart's signing the lease, had knowledge of the lease terms including the renewal provisions. Having knowledge that an increased rental amount was due pursuant to the renewal terms, Ricart could not merely assume a month-to-month tenancy,

nor could it ignore the rental increase, which it did indeed pay. *Id.* at 383, 587 N.E.2d at 321.

The increased rental amount was not an oral modification of the original lease as argued by Ricart. The increase was clearly made an integral part of the lease. The trial court, therefore, did not err in determining that the renewal rental payments were made in accordance with the terms of the original lease.

Ricart, however, further contends that since it never notified Swad of Ricart's intent to renew for an additional term, its lease obligations were transformed into a month-to-month tenancy. We disagree.

Ricart held over its original lease terms until 1996. Ricart also paid the increased renewal rental amount during the holdover period. A tenant holding over is regarded as consenting to or proposing to enter upon a new lease term. *Baltimore & Ohio RR. Co. v. West* (1897), 57 Ohio St. 161, 49 N.E. 344; *Bumiller v. Walker* (1917), 95 Ohio St. 344, 349, 116 N.E. 797, 799. A landlord may elect to bind a holdover tenant to another term by an act manifesting his intent to so bind the tenant. Such an act manifesting intent may include the act of receiving the tenant's holdover rent payments. *Buschman Co. v. Garfield Realty Co.* (1917), 97 Ohio St. 54, 60, 119 N.E. 142, 144. See, also, *Ahmed v. Scott* (1979), 65 Ohio App.2d 271, 274, 19 O.O.3d 273, 275–276, 418 N.E.2d 406, 409 (holding that where a lease expressly stated that failure to notify of intent to renew lease resulted in a month-to-month tenancy, landlord may accept holdover rent payments as a month-to-month renewal). The tenancy arising from holding over is for another period depending upon the terms specified in the original lease. *Baltimore,* at syllabus; see *Gladwell v. Holcomb* (1899), 60 Ohio St. 427, 54 N.E. 473; *Ruben v. S.M. & N. Corp.* (1993), 83 Ohio App.3d 80, 83, 613 N.E.2d 1101, 1102–1103.

This court has held:

"When a tenant holds over beyond the lease term and pays rent according to the former terms, the law implies a contract on the tenant's part to hold over for an additional term under the same conditions which governed the prior term. * * * Absent any agreement to the contrary, the new lease term is governed by the provisions of the original lease." *Craig Wrecking Co. v. S.G. Loewendick & Sons, Inc.* (1987), 38 Ohio App.3d 79, 81, 526 N.E.2d 321, 324.

The record shows that Ricart held over as a tenant and, therefore, held over for another term under the same conditions that governed the prior term. A holdover lease is governed by the provisions of the original lease, and, in the instant matter, those governing provisions include the renewal of the lease and the corresponding increased rental amounts. While Ricart did not notify Swad of its intent to renew in writing, Ricart's holding over the original term and paying the increased renewal rent, as well as Swad's act of accepting the rent as

payment, created a new lease term in accordance with the terms of the original lease. For the foregoing reasons, we find that the trial court did not err in its decision that no genuine issue of material fact existed in the matter or in its application of law to the facts. Appellant's assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

TYACK and REILLY, JJ., concur.

ARCHER E. REILLY, J., retired, of the Tenth District Court of Appeals, was assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.