OPINION.
{¶ 1} Plaintiff-appellant, Jennifer Koehlke ("Koehlke"), appeals the judgment of the Ashtabula County Court of Common Pleas, which granted summary judgment in favor of appellee, The Cincinnati Insurance Company ("Cincinnati").
 {¶ 2} On May 16, 1998, Koehlke was involved in a single car accident while riding as a passenger in her own vehicle. The car was driven by Jose Marte. Koehlke sustained serious injuries while Marte was not injured. Marte was insured through a policy issued by Nationwide Insurance Company. Koehlke's vehicle was also insured under another policy through Nationwide. Koehlke subsequently settled with Nationwide for the tortfeasor's liability in the amount of $251,246.83. Koehlke executed a release at that time with Nationwide which expressly stated that no subrogation rights were reserved.
 {¶ 3} At the time of the accident, Koehlke was employed as a manager at the Clay Street Inn, Inc. ("Clay Street"). Clay Street maintained a commercial general liability policy issued from Cincinnati. Clay Street purchased the insurance when the status of the business was a sole proprietorship. Thus, the declarations page denotes the insured as "Shelly J. Koehlke-Stark d.b.a. Clay Street Inn." The effective dates of the policy are from October 7, 1996 through October 7, 1999. Subsequent to the initiation of the policy, but prior to the accident, Shelly J. Koehlke-Stark filed papers of incorporation and formed Clay Street Inn, Inc. on February 11, 1997.
 {¶ 4} On October 5, 2001, Koehlke filed the instant declaratory judgment action in an effort to recover uninsured/underinsured motorist (UM/UIM) coverage through Clay Street's commercial general liability policy pursuant to the Scott-Pontzer theory of liability.[1] Cincinnati has maintained that the instant lawsuit was its first notice of either Koehlke's claim, or the change in Clay Street's business status.
 {¶ 5} On September 16, 2002, Koehlke filed a motion for partial summary judgment on the issue of liability with damages to be determined. Cincinnati filed its motion in opposition and a cross-motion for summary judgment on October 16, 2002. On December 5, 2002, the trial court entered judgment, denying Koehlke's motion for partial summary judgment and granting Cincinnati's motion for summary judgment. Koehlke ultimately filed this timely appeal, citing two assignments of error:
 {¶ 6} Koehlke's first assignment of error is:
 {¶ 7} "The trial court erred in granting the cross motion for summary judgment for defendant-appellee."
 {¶ 8} Regarding a motion for summary judgment, the moving party has the burden of establishing that there is no genuine issue of material fact, that the moving party is entitled to judgment as a matter of law, and that reasonable minds, construing the evidence in favor of the nonmoving party, can come to but one conclusion which is adverse to the nonmoving party.[2]
 {¶ 9} In her first assignment of error, Koehlke contends that the trial court erred by "confusing the language of the policy concerning the policy's terms with the status of the named insured." (Emphasis in original.)
 {¶ 10} Cincinnati asserts that Koehlke never raised the issue regarding whether Cincinnati can avoid coverage due to a change in the business status of the insured at the lower court and is, therefore, precluded from making those arguments for the first time on appeal.[3]
However, a review of the record reveals that in Koehlke's reply to Cincinnati's brief in opposition to Koehlke's motion for summary judgment and cross-motion for summary judgment, she argued that the insurance policy did not require that Cincinnati be notified of a change in Clay Street's business structure. Koehlke makes ostensibly the same argument here in her first assignment of error.
 {¶ 11} Koehlke contends that the trial court erred in holding that the policy language required Clay Street to notify Cincinnati that it had changed its business status. When interpreting the terms of a contract, courts are to give terms and phrases in the contract their plain and ordinary meaning.[4] Where the terms of a contract are clear and unambiguous, its interpretation is a matter of law.[5]
 {¶ 12} The language in question in the instant case is the policy provision designated "changes." That clause states, in its entirety:
 {¶ 13} "This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy."
 {¶ 14} Koehlke contends that the language does not require the insured to notify the insurance company of a change in business status but, rather, that the insurer has a responsibility to keep itself notified of changes in the business status of its insureds. Koehlke further states that the essence of the insurance policy would not change regardless if the insured were a sole proprietorship or a corporation.
 {¶ 15} The trial court held that the business status issue was dispositive to the ultimate outcome. The court held that theScott-Pontzer theory of liability does not apply in this situation because Clay Street was a sole proprietorship at the time the policy was issued. Thus, under the policy in question, the court held that, as the insured listed is "Shelly J. Koehlke, d.b.a. Clay Street Inn" and further delineates it as an "INDIVIDUAL" policy, "there is no ambiguity in the definition of who is an insured person, as there is when the named insured is a corporation." Therefore, the trial court held Scott-Pontzer
would not apply and plaintiff would not be insured under the policy.
 {¶ 16} The trial court further held that the language in the "changes" clause does not provide for unilateral changes to the policy but requires consent and a written endorsement by the insurer. Thus, the trial court held, without consent and a written endorsement, the insured under the policy remains the sole proprietorship, not a corporation.
 {¶ 17} This court has held that a sole proprietorship has no legal identity separate from the individual named in the policy and, therefore, Scott-Pontzer does not apply.[6] Here, as in Herschell, the declarations page listed the insured as the individual sole proprietor followed by the d.b.a. designation. This court held that "[u]nlike a corporation, a sole proprietorship does not have an identity separate from the individual who owns it. When `d.b.a.' (doing business as) is used, there is no legal distinction between the individual and the business entity since it is merely a descriptive of the person who does business under some other name."[7]
 {¶ 18} Here, unlike in Herschell, the sole proprietorship was transformed into a corporation prior to Koehlke's accident. However, despite the change in the business status, Cincinnati never received notice of the change in status and continued to provide sole proprietorship coverage. We find Koehlke's argument, placing the onus on Cincinnati to monitor its insureds to detect changes in circumstances, to be untenable. To do so would render the "changes" clause in the provision meaningless. Shelley J. Koehlke, as the sole proprietor and an insured under the policy, was required by the language in the policy to notify Cincinnati of the change in her business status. Her failure to abide by the terms of the policy should not result in a finding that the insurer is now liable under the Scott-Pontzer theory for an insured that it still recognized under the applicable policy as a sole proprietorship.
 {¶ 19} Koehlke's first assignment of error is without merit.
 {¶ 20} Koehlke's second assignment of error is:
 {¶ 21} "The trial court erred in denying plaintiff-appellant's motion for partial summary judgment."
 {¶ 22} In her second assignment of error, Koehlke contends that the trial court should have ruled that Cincinnati was required to offer UM/UIM coverage pursuant to Selander v. Erie Insurance Group and, as it did not, coverage arises as an operation of law.[8]
 {¶ 23} In Selander, the Supreme Court of Ohio ruled that a general business policy was an automobile policy, pursuant to R.C. 3937.18, because it extended liability for "hired" and "non-owned" automobiles. Hence, in accordance with R.C. 3937.18, the insurer was required to provide UM/UIM coverage. Since coverage was not provided, the court held it arose by operation of law.[9]
 {¶ 24} Koehlke argues that, as the policy in question also contains "hired" and "non-owned" provisions, it is analogous to Selander
and Cincinnati was required to offer UM/UIM coverage and, as it did not, it arises by operation of law. We disagree. The instant case can be distinguished from Selander. In that case, the accident involved employees of a partnership using a "non-owned" vehicle during the scope of employment.[10] Here, Koehlke was not in the scope of employment at the time of her accident and was a passenger in her own vehicle, which could not be classified as a "non-owned" vehicle as that term is defined in the applicable endorsement. Furthermore, as noted supra, the policy itself delineates only the sole proprietor as the individual insured, precluding a finding that Koehlke is an insured under the policy.
 {¶ 25} Therefore, there is no requirement, pursuant to Selander or by operation of law, that Cincinnati provide UM/UIM coverage to an employee of a sole proprietorship who is involved in an accident involving her own vehicle outside the scope and course of her employment.
 {¶ 26} Koehlke's second assignment of error is without merit.
 {¶ 27} Based on the foregoing, we find Koehlke's first and second assignments of error to be without merit, and the judgment of the trial court is affirmed.
JUDITH A. CHRISTLEY and CYNTHIA WESTCOTT RICE, JJ., concur.
[1] Scott-Pontzer v. Liberty Mut. Fire Ins. Co. (1999),85 Ohio St.3d 660.
[2] Dresher v. Burt (1996), 75 Ohio St.3d 280, 293.
[3] Dolan v. Dolan, 11th Dist. Nos. 2000-T-0154 and 2001-T-0003,2002-Ohio-2440, at ¶ 7.
[4] Commercial Intertech Corp. v. Guyan Internatl. (Mar. 30, 2001), 11th Dist. No. 99-P-0119, 2001 Ohio App. LEXIS 1556, at *4.
[5] Dodds v. Conrad (Feb. 16, 2001), 11th Dist. No. 99-P-0079, 2001 Ohio App. LEXIS 591, at *5.
[6] Herschell v. Rudolph, 11th Dist. No. 2001-L-069, 2002-Ohio-1688, 2002 Ohio App. LEXIS 1672.
[7] Id. at *19.
[8] Selander v. Erie Ins. Group (1999), 85 Ohio St.3d 541.
[9] Id. at 546.
[10] Id.