OPINION *Page 2 
{¶ 1} Appellant Tower Realty, Inc. ("Tower Realty") appeals the decision to grant summary judgment to its tenant, Appellees Glen and Kathleen Zalenski ("Appellees"), in a dispute over the termination of a three-year commercial lease. Appellees, d/b/a Green Mill Restaurant, rented space from Tower Realty in downtown Steubenville, Ohio, but abandoned the property after disputes arose concerning certain on-site equipment. Tower Realty filed a breach of contract complaint seeking the amount remaining on the lease, and Appellees filed a counterclaim and asserted that Tower Realty breached the contract first by failing to make repairs to the equipment as required by the lease. Appellees filed a motion for summary judgment on Tower Realty's complaint. The Jefferson County Court of Common Pleas sustained the motion and dismissed Tower Realty's claim. The record indicates that the lease was improperly executed, that a month-to-month tenancy resulted, and that Appellees were current on their lease payments when they returned the premises to Tower Realty. The trial court was correct in granting summary judgment to Appellees, and the judgment is affirmed. Because there is one counterclaim still pending before the trial court, the case is remanded to the court for further proceedings.
 HISTORY OF THE CASE {¶ 2} Appellees entered into a three-year lease with Tower Realty on September 18, 2003. The term of the lease was from October 20, 2003, until October 20, 2006. The rent was $700 per month. The tenants leased the space to establish a restaurant. Article VII of the lease states, in pertinent part: *Page 3 
 {¶ 3} "During the Term hereof, at its sole cost and expense, Landlord shall keep the mechanical appurtenances and equipment in good order, operating condition and repair."
 {¶ 4} The lease was signed by Dr. Frank L. Petrola, M.D., who is an officer of Tower Realty. The signature does not indicate whether he was signing as an officer of the corporation, as some other type of agent, or only in his individual capacity.
 {¶ 5} When Appellees took possession of the premises, some equipment was already on-site, including a refrigerator and freezer. (Petrola Depo., p. 9.) At various times before and after Appellees took possession, there were problems with the refrigerator and freezer. In mid-June of 2005, Appellees told Petrola that the cooler and freezer were broken and needed to be repaired or replaced. Petrola told Appellees, "I'm not responsible for it and I'm not replacing anything." (Petrola Depo., p. 19.)
 {¶ 6} In the first week of July, 2005, Appellees left the premises and stopped paying rent.
 {¶ 7} On November 28, 2005, Tower Realty filed a complaint against Appellees in the Jefferson County Court of Common Pleas, alleging breach of contract and requesting past due rent as well as the rental payments for the remainder of the lease. The complaint was amended on January 27, 2006, to add as plaintiffs Frank Petrola and the Petrola Family Trust. On February 21, 2006, Appellees filed an answer and a counterclaim alleging damages for Tower Realty's *Page 4 
failure to perform required repairs on equipment, and damages for lost profits. The deposition of Frank Petrola was also filed with the court on February 21, 2006.
 {¶ 8} On October 16, 2006, the trial court ruled that the lease was defectively executed, thereby creating a month-to-month tenancy. The court also dismissed the Petrola Family Trust and Frank Petrola as plaintiffs.
 {¶ 9} On January 5, 2007, Appellees filed a motion for summary judgment on Tower Realty's claim for past and future rent. On January 19, 2007, Tower Realty filed a motion in opposition to summary judgment. The rebuttal motion contained an affidavit from Dr. Petrola.
 {¶ 10} On February 8, 2007, the trial court ruled in favor of Appellees and dismissed Tower Realty's claim for rent. The court also denied Tower Realty's claim for attorney fees. The court noted that Appellees' counterclaim remained pending. On May 4, 2007, the trial court filed an amended judgment entry that added the phrase "there is no just cause for delay" as required by Civ. R. 54(B) in order to allow for an immediate appeal of the partial summary judgment. Although mere use of "no just cause for delay" language does not per se create a final appealable order, it does allow for the immediate appeal of an interlocutory order if the order otherwise qualifies as final and appealable under R.C. 2505.02 or related statutes. Denham v. NewCarlisle (1999), 86 Ohio St.3d 594, 716 N.E.2d 184; Chef Italiano Corp.v. Kent State Univ. (1989), 44 Ohio St.3d 86, 541 N.E.2d 64; Rulli v.Rulli, 7th Dist. 01 CA 114, 2002-Ohio-3205. There are two issues still before the trial court for resolution in Appellees' counterclaim. The first concerns Appellees' demand for reimbursement *Page 5 
for money they spent on repairs that they were not required to make under the terms of the lease. The second is a demand for lost profits based on the landlord's failure to repair leasehold equipment. These claims require evidence distinct from the evidence needed to dispose of Tower Realty's claim for rent, and Appellees' counterclaim will not be affected by the outcome of this appeal. The judgment entry at issue in this appeal completely resolved Tower Realty's claim for rent and satisfies the requirements of R.C. 2505.02(B)(2) defining a final appealable order as one that determines the action and prevents a judgment.
 ASSIGNMENT OF ERROR {¶ 11} "THE TRIAL COURT ERRED IN GRANTING APPELLEE'S [sic] MOTION FOR SUMMARY JUDGMENT."
 {¶ 12} Appellant is challenging the trial court's decision to grant summary judgment to Appellees. A trial court's ruling on a motion for summary judgment is reviewed de novo on appeal, using the same standards as the trial court as set forth in Civ. R. 56(C). Grafton v. Ohio EdisonCo. (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241. Before summary judgment can be granted, the trial court must determine that: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most favorably in favor of the party against whom the motion for summary judgment is made, the conclusion is adverse to that party. Temple v. Wean United, Inc. (1977),50 Ohio St.2d 317, 327, 4 O.O.3d 466, 364 N.E.2d 267. *Page 6 
 {¶ 13} "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifyingthose portions of the record which demonstrate the absence of a genuineissue of fact on a material element of the nonmoving party'sclaim." (Emphasis sic.) Dresher v. Burt (1996), 75 Ohio St.3d 280, 296,662 N.E.2d 264. If the moving party meets its initial burden, the nonmoving party bears a reciprocal burden to produce evidence on any issue for which that party bears the burden of proof at trial. Id. at 293, 662 N.E.2d 264.
 {¶ 14} There are two prongs to Tower Realty's assignment of error. The first deals with whether summary judgment was improper because of material evidence in dispute about Appellees' rent payments. The other deals with attorney fees.
 {¶ 15} Tower Realty's first argument is that Appellees did not meet their burden of proof to establish that no material facts were in dispute. Appellees relied on Dr. Petrola's deposition, made part of the court's record on February 21, 2006. Tower Realty relied primarily on a subsequent affidavit of Dr. Petrola that supplemented his earlier deposition testimony. Tower Realty contends that the affidavit contradicts the deposition testimony and creates a dispute over material facts in this case. A close inspection of the two documents, though, reveals no material contradictions and indicates that that the trial court was correct in granting summary judgment to Appellees.
 {¶ 16} Tower Realty made a basic claim for unpaid rent due under a written lease. On October 16, 2006, the trial court ruled that the lease was defective and that Appellees occupied the premises under a month-to-month tenancy. The defect *Page 7 
appears to have been that Dr. Petrola did not personally own the leased premises, while he signed the lease only in his individual capacity. There is no indication that Tower Realty is challenging the trial court's prior ruling that the lease was defectively executed, creating a month-to-month tenancy as a matter of law. Even if Tower Realty had challenged this ruling, the trial court appears to be correct that a defective lease that provides for monthly rent creates a tenancy from month-to-month similar to that of a holdover tenancy. Cesta v.Manfredi (1995), 101 Ohio App.3d 326, 329, 655 N.E.2d 755; Baltimore Ohio RR. Co. v. West (1897), 57 Ohio St. 161, 165, 49 N.E. 344. Thus, we find no material fact in dispute about the month-to-month lease.
 {¶ 17} The record is a bit vague as to the exact timing of the last rent payment and the exact date that Appellees vacated the premises. Dr. Petrola alleges in his affidavit that Appellees vacated the premises the first week of July, 2005. Dr. Petrola acknowledges a number of times that rent was paid through June of 2005. Although Appellees attached copies of cancelled monthly rent checks to their motion for summary judgment, the checks were not referenced through an affidavit or other proper form of evidence allowed by Civ. R. 56, so they are not part of the evidence. Furthermore, the checks do not clearly indicate the lease period that applies to each payment. The last check appears to be dated June 20, 2005, but it is not clear whether this covers the month of June, the month of July, or some other period.
 {¶ 18} Despite this confusion, summary judgment was appropriate because Tower Realty is only disputing whether an extra month of rent is due for August based on the theory that Appellees were required to give 30 days prior notice before *Page 8 
vacating the premises. Appellant alleges that Appellees gave no notice until the first week of July. Appellant concludes that Appellees could not properly vacate until the first week of August, thus giving rise to rent liability in August. In other words, Tower Realty seems to be conceding the July rent was paid and is only arguing about rent for August.
 {¶ 19} Tower Realty's theory behind why Appellees were required to give 30 days notice is not made clear. Under common law, a month-to-month holdover tenant, or a month-to-month tenant arising from a void lease, does not need to give notice that they are terminating the lease at the end of the current lease period:
 {¶ 20} "[A] tenancy from year-to-year arising from a tenant's holding over terminates at the end of the year unless the parties by some new agreement, express or implied, extend it for a longer period.
 {¶ 21} "No notice is required to terminate the tenancy, and this rule applies to tenancies for another year or from year-to-year and to tenancies for another month." 65 Ohio Jurisprudence 3d (2006) 572, Section 475; see also Gladwell v. Holcomb (1899), 60 Ohio St. 427, 436,54 N.E. 473.
 {¶ 22} Tower Realty does not seem to be relying on the common law, but rather, on the notice provision of R.C. 5321.17(B), which states: "Except as provided in division (C) of this section, the landlord or the tenant may terminate or fail to renew a month-to-month tenancy by notice given the other at least thirty days prior to the periodic rental date." There are a number of problems with Tower Realty's argument, *Page 9 
if it is based on this statute. First, R.C. 5321.17 does not apply to commercial leases, and the lease in this case was a commercial lease:
 {¶ 23} "Although R.C. 5321.17(B) does not distinguish between residential and commercial leases by its own terms, Kovach's argument is directly contradicted by R.C. 5321.01, which defines the terms `landlord' and `tenant' in the following manner:
 {¶ 24} "`(A) "Tenant" means a person entitled under a rental agreement to the use and occupancy of residential premises to the exclusion of others.
 {¶ 25} "`(B) "Landlord" means the owner, lessor, or sublessor ofresidential premises, the agent of the owner, lessor, or sublessor, or any person authorized by the owner, lessor, or sublessor to manage the premises or to receive rent from a tenant under a rental agreement.' (Emphasis added.)
 {¶ 26} "In limiting the definitions of `tenant' and `landlord' in R.C. Chapter 5321 to encompass only tenants and landlords ofresidential property, the General Assembly excluded from such definitions tenants and landlords of commercial property. * * * [W]e hold that the expression of the word `residential' implies the exclusion of the word `commercial.'" Maggiore v. Kovach (2004),101 Ohio St.3d 184, 2004-Ohio-722, 803 N.E.2d 790, ¶ 15-18.
 {¶ 27} Second, even if the statute did apply, there is no question that Appellees gave notice to Dr. Petrola sometime in mid-June that they were terminating the lease. This is acknowledged in Dr. Petrola's deposition and his affidavit. (Depo., pp. 18-19; Affidavit, p. 2.) Notice of termination in mid-June cannot give rise to rental obligations in August under 30-day notice provision of R.C. 5321.17(B). Even the *Page 10 
first day of August necessarily occurred more than 30-days after notice of termination provided in June.
 {¶ 28} Now turning to the matter of attorney fees, Tower Realty argues that it should have been able to enforce Article 14 of the lease regarding reimbursement for fees and expenses when the landlord commences legal action against the tenant. Tower Realty is presuming that the terms of the lease were still relevant after the trial court found that the lease was defectively executed and was void. Ohio law addresses void leases as follows: "The well settled rule appears to be * * * that where the lessee enters into possession of the demised premises under a lease for a term of years at an annual rent, if the lease for any cause be void he becomes a tenant for a year, at the rent reserved in the lease, and subject to all of its provisions, except its duration * * *." Baltimore O.R. Co. v. West (1897), 57 Ohio St. 161, 165,49 N.E. 344. "[W]hen a tenant holds over, whether he is a tenant for a term of years, or from year to year, he impliedly holds according to all the conditions of the original lease which are applicable to his new situation, and the law will imply those terms which are found in the contract which has expired." Id. at 166. See also, Craig Wrecking Co. v.S.G. Loewendick Sons, Inc. (1987), 38 Ohio App.3d 79, 526 N.E.2d 321;Bill Swad Chevrolet, Inc. v. Ricart Jeep Eagle, Inc. (1998),129 Ohio App.3d 501, 718 N.E.2d 470. Based on this caselaw, it is possible that a provision regarding attorney fees could be relevant even in a void lease.
 {¶ 29} Assuming arguendo that Tower Realty can enforce specific provisions of the void lease, it contends that it should be able to collect attorney fees for *Page 11 
prosecuting its complaint under Section 14 of the lease. This section is titled "Default," and lists several circumstances that put the tenant in default, such as when the tenant fails to pay rent, fails to observe covenants in the lease, or declares bankruptcy. If any of the enumerated circumstances occur, the lease provides the following remedy:
 {¶ 30} "If Landlord shall be required to commence any action or proceeding to collect the foregoing amounts, or to enforce any other obligation of Tenant under this Lease, Landlord shall be entitled to a reimbursement of all costs and expenses incurred in said matter, including reasonable attorney's fees."
 {¶ 31} The trial court determined that the attorney fee provision was only triggered if Tower Realty was "required to commence" an action or proceeding, since this is the language used in the lease. In the instant case, Tower Realty was not required to commence any action to collect unpaid rent because Appellees did not default or breach with respect to payment of rent. They paid their rent and they vacated the premises prior to the end of the final lease period, at least based on the month-to-month tenancy determined by the trial court. If Appellees did nothing wrong, it is difficult to see why Tower Realty would have been "required to commence" an action or proceeding against them. The trial court correctly ruled that the attorney fee provision was not triggered and that Tower Realty was not entitled to such fees.
 {¶ 32} Although there is discussion in both briefs about whether Tower Realty was responsible for making repairs on certain equipment, and whether the failure to *Page 12 
make repairs constituted a breach by the landlord, these questions are not particularly relevant to this appeal. The landlord's breach of his lease requirement to repair equipment could possibly provide an additional reason to grant summary judgment to Appellees, but this additional proof was not necessary for the trial court's judgment and is not necessary to decide this appeal. The only issue on appeal is whether Tower Realty is due rent for any time period, and the answer is that Appellees do not owe additional rent because they properly paid their rent and properly terminated the month to month tenancy by the time they vacated the premises in the first week of July. Whether Appellees should be reimbursed for repairs that Tower Realty should have paid is a separate question that has not yet been resolved and is one of the key questions that remain pending in Appellees' counterclaim.
 {¶ 33} The record indicates that Appellees fully paid their rent under a month-to-month tenancy, and the judgment of the trial court is affirmed. The case is remanded so that the remaining counterclaim may be resolved.
Donofrio, J., concurs.
 Vukovich, J., concurs. *Page 1