**CAPELLA III, L.L.C. et al., Appellants,**

**v.**

**WILCOX; Dabbert, Appellee.**

[Cite as *Capella III, L.L.C. v. Wilcox*, 190 Ohio App.3d 133, 2010-Ohio-4746.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 10AP–206.

Decided Sept. 30, 2010.

134

Madison & Rosan, L.L.P., Kristin E. Rosan, and Darcy A. Shafer, for appellants.

Mann & Preston and James L. Mann, for appellee.

KLATT, Judge.

{¶ 1} Plaintiffs-appellants, Capella III, L.L.C. and Village Square Retail, L.L.C., appeal from a judgment in favor of defendant-appellee, Patricia Bick, now known as Patricia E. Dabbert. For the following reasons, we affirm in part and reverse in part.

{¶ 2} In March 2000, Robert Wilcox and Dabbert formed Proper Puppy, Inc., an Ohio corporation. Wilcox and Dabbert planned to operate My–T–Fine Dog Gym, a dog training and day-care business, through their corporation. On March 29, 2000, Wilcox and Dabbert executed a five-year lease with Weybridge–Village Square, L.L.C. ("Weybridge") for retail space located in the Village Shopping

Center. Although Wilcox and Dabbert intended to use the space for their business, they both signed the lease in their individual, not corporate, capacities.

{¶ 3} In May 2000, Wilcox and Dabbert opened My–T–Fine Dog Gym for business. Dabbert quickly became disenchanted with Wilcox, and in June 2000, she sold her shares in Proper Puppy, Inc. to Wilcox. Thereafter, Wilcox operated My–T–Fine Dog Gym without Dabbert's involvement.

{¶ 4} The lease for the Village Shopping Center retail space ended on April 30, 2005. Wilcox, however, continued to occupy the premises and remit monthly rental payments to Weybridge. Instead of evicting Wilcox, Weybridge accepted the rental payments.

{¶ 5} In November 2005, Wilcox signed an estoppel certificate at Weybridge's request. Weybridge sought the estoppel certificate as part of its preparations to sell the Village Shopping Center to appellants. In the estoppel certificate, Wilcox represented that the lease was in full force and effect and that the lease was for a month-to-month term.

{¶ 6} The estoppel certificate included a space for Dabbert to sign, but that space was manually crossed out. This deletion is consistent with an e-mail that the property manager for the Village Shopping Center sent to appellants in November 2005, which stated:

Patricia Bick [Dabbert] who originally signed the Lease with Robert Wilcox has not been involved in the business since May of 2000 per the attached letter dated December 13, 2000. Robert Wilcox does not know her whereabouts and has been responsible for the lease since May of 2000. Furthermore, the lease is month-to-month.

{¶ 7} Appellants purchased the Village Shopping Center in December 2005, and as part of the sale, Weybridge assigned to appellants all of the leases for retail spaces in the Village Shopping Center. Approximately two months later, Wilcox failed to make his monthly rental payment. Although Wilcox submitted a $3,000 check to appellants in March 2006, he otherwise defaulted on his payment obligations under the lease. Wilcox vacated the premises in June 2006, by which time he owed appellants $21,333.66 for unpaid rental payments, operating expenses, and late fees.

{¶ 8} On October 31, 2006, appellants filed suit against Wilcox and Dabbert for breach of contract. In the complaint, appellants acknowledged that the lease had expired, but they alleged that a holdover tenancy existed. Applying the terms of the lease to the holdover tenancy, appellants claimed that Wilcox and Dabbert owed them for unpaid rent and other charges as assessed under the lease. Dabbert answered the complaint, but Wilcox did not. Appellants sought, and received, a default judgment against Wilcox.

{¶ 9} Both appellants and Dabbert moved for summary judgment. The trial court denied both motions and referred the matter to a magistrate for trial. After a bench trial, the magistrate issued a decision finding that Dabbert was not a holdover tenant and that she was not liable for any amounts owed that accrued during the holdover tenancy. Despite appellants' objections, the trial court adopted the magistrate's decision.

{¶ 10} While the objections to the magistrate's decision were pending, Dabbert filed a motion for attorney fees. Dabbert claimed entitlement to attorney fees under Section 26(b) of the lease, which states:

If any legal action, arbitration or other proceeding is brought by either party to this lease against the other for the enforcement of this lease, * * * the successful or prevailing party shall be entitled to recover as an element of its damages, reasonable attorney's fees and all other costs incurred in that action or proceeding * * *.

{¶ 11} The trial court referred the motion to a magistrate. After an evidentiary hearing, the magistrate issued a decision in which he determined that the lease entitled Dabbert to reasonable attorney fees and legal costs and awarded Dabbert $10,978.66. Again, the trial court rejected appellants' objections and adopted the magistrate's decision. On February 10, 2010, the trial court issued a judgment entry that entered judgment in Dabbert's favor and awarded her attorney fees and costs.

{¶ 12} Appellants now appeal and assign the following errors:

1. The trial court erred as a matter of law when it denied appellants' motion for summary judgment.

2. The trial court abused its discretion when it adopted the magistrate's decision on the merits as such decision was unreasonable, arbitrary, unconscionable and contrary to law.

3. The trial court abused its discretion when it adopted the magistrate's decision on attorney fees as such decision was inconsistent with the decision on the merits and was unreasonable, arbitrary, unconscionable and contrary to law.

{¶ 13} By their first assignment of error, appellants argue that the trial court erred in denying their motion for summary judgment. Ordinarily, "the denial of a motion for summary judgment is not a point of consideration in an appeal from a final judgment entered following a trial on the merits." *Continental Ins. Co. v. Whittington* (1994), 71 Ohio St.3d 150, 156, 642 N.E.2d 615. If a trial court denies a summary-judgment motion due to the existence of genuine issues of material fact, and a subsequent trial results in a verdict for the party who did not move for summary judgment, then any error in denying the motion

for summary judgment is rendered moot or harmless. Id. To allow a summary-judgment decision based upon less evidence to prevail over a verdict reached on more evidence would defeat the fundamental purpose of judicial inquiry. Id. at 157, 642 N.E.2d 615.

{¶ 14} However, error in the denial of a summary-judgment motion that presents a purely legal question is not rendered harmless by a subsequent trial on the merits. Id. at 158, 642 N.E.2d 615; *Miller v. Lindsay–Green, Inc.,* 10th Dist. No. 04AP–848, 2005-Ohio-6366, 2005 WL 3220215, ¶ 32. Consequently, an appellate court may review a denial of a motion seeking summary judgment on a pure question of law regardless of the movant's lack of success at trial. *Sicklesmith v. Chester Hoist,* 169 Ohio App.3d 470, 2006-Ohio-6137, 863 N.E.2d 677, ¶ 183; *Miller* at ¶ 32; *Stewart v. Ohio Dept. of Rehab. & Corr.,* 10th Dist. No. 02AP–816, 2003-Ohio-588, 2003 WL 257511, ¶ 8. "In other words, when the alleged error in the denial of summary judgment is based purely on a question of law that must be answered without regard to issues of fact, then the denial of summary judgment is reviewable." *Promotion Co., Inc./Special Events Div. v. Sweeney,* 150 Ohio App.3d 471, 2002-Ohio-6711, 782 N.E.2d 117, ¶ 15.

{¶ 15} Here, appellants sought summary judgment on legal grounds, the resolution of which did not depend on disputed issues of material fact. We thus conclude that a subsequent trial did not render harmless the asserted error in the denial of the summary-judgment motion. Therefore, we will consider the merits of appellants' argument that the trial court should have granted them summary judgment.

{¶ 16} Appellate review of summary-judgment motions is de novo. *Andersen v. Highland House Co.* (2001), 93 Ohio St.3d 547, 548, 757 N.E.2d 329. " 'When reviewing a trial court's ruling on summary judgment, the court of appeals conducts an independent review of the record and stands in the shoes of the trial court.' " *Abrams v. Worthington,* 169 Ohio App.3d 94, 2006-Ohio-5516, 861 N.E.2d 920, ¶ 11, quoting *Mergenthal v. Star Banc Corp.* (1997), 122 Ohio App.3d 100, 103, 701 N.E.2d 383. Civ.R. 56(C) provides that a trial court must grant summary judgment when the moving party demonstrates that (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made. *Gilbert v. Summit Cty.,* 104 Ohio St.3d 660, 2004-Ohio-7108, 821 N.E.2d 564, ¶ 6.

{¶ 17} In their motion for summary judgment, and now on appeal, appellants argue that Dabbert failed to fulfill her obligations under a holdover tenancy that arose when Wilcox continued to occupy the retail space after the

expiration of the lease. Appellants assert that Dabbert was a party to the holdover tenancy, and thus, she owes them for unpaid rent and other charges that accrued during the holdover tenancy.

{¶ 18} When a tenant fails to surrender the premises after the end of a lease, the law construes the tenant's continued occupancy as a proposal to lease the premises for another term. *Buschman Co. v. Garfield Realty Co.* (1917), 97 Ohio St. 54, 60, 119 N.E. 142; *Gladwell v. Holcomb* (1899), 60 Ohio St. 427, 435–437, 54 N.E. 473; *Baltimore & Ohio RR. Co. v. West* (1897), 57 Ohio St. 161, 168, 49 N.E. 344; *Bill Swad Chevrolet, Inc. v. Ricart Jeep Eagle, Inc.* (1998), 129 Ohio App.3d 501, 505, 718 N.E.2d 470. Under Ohio common law, a tenant who holds over beyond the lease term becomes a tenant at sufferance. *Anderson v. Brewster* (1887), 44 Ohio St. 576, 580, 9 N.E. 683; *Craig Wrecking Co. v. S.G. Loewendick & Sons, Inc.* (1987), 38 Ohio App.3d 79, 81, 526 N.E.2d 321. Because such a tenant has no rights to the leasehold, the landlord has the option to accept the tenant's proposal for a new lease term or reject the tenant's proposal and evict him as a trespasser. *Buschman Co.* at 60, 119 N.E. 142; *Gladwell* at paragraph two of the syllabus; *West* at 166, 49 N.E. 344. The landlord may consent to the proposed tenancy through the acceptance of rent or other conduct signaling acquiescence. *Buschman Co.* at 60, 119 N.E. 142; *Gladwell* at 436, 54 N.E. 473; *West* at 168, 49 N.E. 344; *Bill Swad Chevrolet, Inc.* at 505, 718 N.E.2d 470. Thus, if the tenant and landlord's conduct after the expiration of a lease indicates their intention to enter into another tenancy, the law implies a contract between the parties for a periodic tenancy. *Buschman Co.* at 60, 119 N.E. 142; *Gladwell* at 435–437, 54 N.E. 473; *West* at 166–168, 49 N.E. 344; *Steiner v. Minkowski* (1991), 72 Ohio App.3d 754, 762, 596 N.E.2d 492; *Craig Wrecking* Co. at 81, 526 N.E.2d 321. Generally, the terms and conditions of the original lease govern the holdover lease term. *West* at 166–167, 49 N.E. 344; *Steiner* at 762, 596 N.E.2d 492; *Craig Wrecking Co.* at 81–82, 526 N.E.2d 321.

{¶ 19} Here, the parties do not dispute that Wilcox continued to occupy the retail space after the expiration of the lease or that Weybridge accepted Wilcox's monthly rent checks. Consequently, on the basis of Wilcox and Weybridge's conduct, the law implies a holdover tenancy. The resolution to this case turns on one question: was Dabbert a party to that holdover tenancy?

{¶ 20} When one of two tenants named in the original lease holds over, only the tenant who continues to occupy the premises is a party to the holdover tenancy. *Wageman v. Stevens* (1909), 42 Ohio C.C. 79, 81, affirmed (1912), 85 Ohio St. 490, 98 N.E. 1135. As the court in *Wageman* explained, the privity of estate and contract, which the original lease created, terminates with the expiration of the lease. Id. A new and independent agreement grows out of and is

founded upon the tenant's continued possession of the leased premises. Id. The court went on to hold:

> There is no necessity that the implied agreement should be deemed to be between the same parties as the original lease. The new tenancy arises from the circumstances of the case and the conduct and interest of the parties. True, it follows the terms of the old agreement, but it does not depend upon it. It is only actual occupancy, the continuance of which gives rise to the assumpsit in regard to payment of rent. The obligation does not attach to one who has no participation in such actual occupancy. * * * [Only] the actual occupant must be regarded as the tenant.

Id. Not only is this rule of law logical and sound, it also corresponds with precedent from other jurisdictions regarding this issue. *Bockelmann v. Marynick* (Tex.1990), 788 S.W.2d 569, 570 ("[O]ne tenant is not jointly liable for the holding over of another"); *Mosher v. Sabra* (1929), 34 Ariz. 536, 540, 273 P. 534 (holding that one of two tenants cannot "create a situation wherein the law would impose an obligation on the other to pay rent, he having never occupied or retained possession after the expiration of the joint lease"); *Sutton v. Regina Metro. Co.* (N.Y.Sup.App.2005), 8 Misc.3d 126(A), 2005 WL 1397479, *1 (holding that a co-tenant "cannot, by the act of holding over, create a new contract binding a nonconsenting tenant * * * who is not in actual possession"); *Cote v. Landau* (Mo.App.1930), 29 S.W.2d 224, 226 ("[O]ne colessee cannot impose any liability upon the other by holding over without the latter's consent").

{¶ 21} Applying *Wageman* to this case, we conclude that Dabbert was not a party to the holdover tenancy that arose between Wilcox and Weybridge. Consequently, Dabbert cannot be liable for unpaid rent and other charges that accrued during the holdover tenancy.

{¶ 22} In arguing to the contrary, appellants rely primarily on *Wilder v. Block* (1887), 10 Ohio Dec.Rep. 162, 19 W.L.B. 105, 1887 WL 878. There, a partnership leased premises to operate its business. The lease listed the names of each individual partner. Soon after the partnership entered into the lease, one of the partners withdrew from the partnership. No one notified the landlord of the withdrawal. At the end of the original lease term, the partnership informed the landlord that it intended to renew the lease. The partnership defaulted on the lease during the renewal term, and the landlord sued all the partners, including the partner who had withdrawn. The trial court found the partner who withdrew liable under the renewed lease, holding that "[a]ll the reasons, which apply to the dealings of the firm, with persons extending credit to it in the ordinary course of its business, without knowledge of the change in partners, apply to this case."

{¶ 23} A review of Ohio common law explicates the holding in *Wilder*. Prior to the adoption of a statutory scheme governing partnerships, Ohio common law dictated as follows:

> [W]here credit is extended to a limited partnership after a change of general partners by a creditor having no notice or knowledge of such change of general partners, and who had extended credit to the partnership prior to such change, the withdrawing general partners are liable to the creditor for such credit extended * * *.

*Baltzell–Wolfe Agencies, Inc. v. Car Wash Invests. No. 1, Ltd.* (1978), 58 Ohio App.2d 70, 74, 12 O.O.3d 219, 389 N.E.2d 517. Neither this rule, nor the *Wilder* decision, has any applicability to the instant case. Wilcox and Dabbert did not structure their business as a partnership. Rather, the evidence establishes that Wilcox and Dabbert operated their business through a corporation.

{¶ 24} Moreover, we reject appellants' argument that Wilcox and Dabbert formed a "de facto partnership" by entering a lease that described the "Tenant" as "Robert Wilcox and Patricia Bick [Dabbert] d.b.a. My–T–Fine Dog Gym." Pursuant to R.C. 1775.06(B), joint tenancy does not of itself establish a partnership.[1] Additionally, a partnership does not result from the representation that Wilcox and Dabbert were "doing business as" My–T–Fine Dog Gym. Doing business under another name does not create an entity distinct from the person operating the business. *Patterson v. V. & M Auto Body* (1992), 63 Ohio St.3d 573, 575, 589 N.E.2d 1306. " 'When "d.b.a." (doing business as) is used, there is no legal distinction between the individual and the business entity since it is merely a descriptive of the person who does business under some other name.' " *Koehlke v. Clay St. Inn, Inc.*, 11th Dist. No. 2002–A–0108, 2003-Ohio-5353, 2003 WL 22290888, ¶ 17, quoting *Herschell v. Rudolph*, 11th Dist. No. 2001–L–069, 2002-Ohio-1688, 2002 WL 549980.

{¶ 25} Appellants next argue that Wilcox made Dabbert a party to the holdover tenancy when he signed the estoppel certificate. In the estoppel certificate, the "Tenant"—defined as "Robert Wilcox and Patricia Bick [Dabbert] d.b.a. My–T–Fine Dog Gym"—represented and warranted that "Tenant is fully obligated to pay * * * the rent and other charges due" under the lease. As we stated above, Dabbert never signed the estoppel certificate; the space for her signature was manually crossed out. Despite the lack of Dabbert's signature, appellants contend that the estoppel certificate obligates Dabbert to pay rent and other charges because Wilcox, when conducting partnership business, had the authority to bind her. We find this argument unavailing. Wilcox and Dabbert did not

---

1. Although R.C. 1775.06 was repealed effective January 1, 2010, we apply it here because it was in effect when Wilcox and Dabbert signed the lease.

form a partnership, so Wilcox had no authority to act on Dabbert's behalf. The estoppel certificate, therefore, does not render Dabbert liable for monthly rental payments and other charges incurred during the holdover tenancy.

{¶ 26} Appellants also argue that Dabbert is liable for unpaid rent and other charges because she failed to obtain the landlord's written consent for assignment or modification of the lease as required in Sections 29(a) and 38 of the lease. Appellants premise this argument on the rule that, generally, the terms and conditions of the original lease govern an implied-in-law holdover tenancy. As *Wageman* held, the terms and conditions of the original lease apply to a newly created holdover tenancy, but the parties to a holdover tenancy are not always the same parties as those to the original lease. Thus, while the terms of the holdover tenancy potentially included Sections 29(a) and 38, those terms did not apply to Dabbert because she was not a party to the holdover tenancy.

{¶ 27} Finally, appellants argue that Dabbert is liable for unpaid rent and other monthly charges that accrued during the holdover tenancy based on Section 31 of the lease. Pursuant to that section, if the "Tenant" or "any party claiming under Tenant" holds over, then the "Tenant" must "upon demand pay to Landlord, as liquidated damages, a sum equal to double the Minimum Rent specified herein for any period during which Tenant shall hold the premises after the stipulated term of this lease may have terminated." Section 31 allows the landlord to collect (upon demand) only liquidated damages—not unpaid rent and other monthly charges. In their complaint, appellants did not demand or seek liquidated damages from either Wilcox or Dabbert. Appellants followed Weybridge's lead in opting to ignore Section 31, and instead, treating Wilcox as a holdover tenant. Consequently, Section 31 does not provide appellants with a basis to recover from Dabbert rent and other monthly charges incurred during the holdover tenancy.

{¶ 28} Given the above analysis, we conclude that the trial court did not err in denying appellants' motion for summary judgment. Accordingly, we overrule appellants' first assignment of error.

{¶ 29} By appellants' second assignment of error, they argue that the trial court erred in granting judgment in favor of Dabbert on their breach-of-contract claim. For all the reasons articulated in response to appellants' first assignment of error, we conclude that as a matter of law, judgment in Dabbert's favor was appropriate. Accordingly, we overrule appellants' second assignment of error.

{¶ 30} By appellants' third assignment of error, they argue that the trial court erred in awarding Dabbert her attorney fees and legal costs. We agree.

{¶ 31} Ohio courts follow the "American Rule," whereby attorney fees are not ordinarily recoverable in a civil action absent a statute or an enforceable

contractual provision providing for those fees.  *Nottingdale Homeowners' Assn., Inc. v. Darby* (1987), 33 Ohio St.3d 32, 33–34, 514 N.E.2d 702.  Here, Dabbert asserts that she is entitled to her attorney fees based on the lease provision that allowed the prevailing party in an action for enforcement of the lease to recover reasonable attorney fees.  Had appellants sued Dabbert to enforce the terms of the original tenancy, Dabbert—as a party to the tenancy—could have relied on that provision to recoup her attorney fees.  Appellants, however, did not sue Dabbert for breaching the terms of the original tenancy.  Rather, appellants sued Dabbert for failing to pay rent and other charges owed during the holdover tenancy.  As we held above, Dabbert was never a party to the holdover tenancy. Thus, the lease terms governing the holdover tenancy—although drawn from the terms of the original lease—have no application to Dabbert.  This means that on one hand, Dabbert avoids all obligations arising from those lease terms that control the holdover tenancy.  On the other hand, as a nonparty to the holdover tenancy, Dabbert cannot enforce the lease terms that govern the holdover tenancy, including the attorney-fees provision.  Accordingly, we sustain appellants' third assignment of error.

{¶ 32} For the foregoing reasons, we overrule appellants' first and second assignments of error, and we sustain appellants' third assignment of error.  We affirm the judgment of the Franklin County Court of Common Pleas to the extent that it entered judgment in Dabbert's favor on the issue of liability. However, we reverse that judgment to the extent that it awarded Dabbert attorney fees and legal costs.  We remand this matter to the Franklin County Court of Common Pleas for it to enter a revised judgment consistent with law and this opinion.

Judgment affirmed in part
and reversed in part,
and cause remanded.

SADLER and McGRATH, JJ., concur.