[Cite as *Wargo v. Susan White Anesthesia, Inc.*, 2011-Ohio-6271.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No. 96410

## LAUREN WARGO

PLAINTIFF-APPELLEE/
CROSS-APPELLANT

vs.

## SUSAN WHITE ANESTHESIA, INC., ET AL.

DEFENDANTS-APPELLANTS/
CROSS-APPELLEES

**JUDGMENT:**
REVERSED AND REMANDED

Civil Appeal from the
Cuyahoga County Common Pleas Court

Case No. CV-653779

**BEFORE:** Blackmon, P.J., Stewart, J., and Cooney, J.

**RELEASED AND JOURNALIZED:** December 8, 2011

ATTORNEYS FOR APPELLANTS

Douglas G. Leak
Roetzel & Andress, LPA
1375 East Ninth Street
Suite 900
Cleveland, Ohio 44114

Stephen D. Jones
Roetzel & Andress, LPA
155 East Broad Street
12th Floor
Columbus, Ohio 43215

Murray K. Lenson
Ulmer & Berne LLP
Skylight Office Tower
1660 West 2nd Street, Suite 1100
Cleveland, Ohio 44113-1448

ATTORNEYS FOR APPELLEE

Peter H. Weinberger
Melissa Z. Kelly
Spangenberg, Shibley & Liber LLP
1001 Lakeside Avenue East
Suite 1700
Cleveland, Ohio 44114

PATRICIA ANN BLACKMON, P.J.:

{¶ 1} Appellants Bryan Michelow, M.D. and Contemporary Cosmetic Surgery, Inc. (collectively referred to as "Dr. Michelow") appeal the jury award and various court rulings in favor of appellee Lauren Wargo ("Wargo"). Dr. Michelow assigns eight errors for our review; Wargo cross-appeals assigning two errors for our review.[1]

{¶ 2} Having reviewed the record and pertinent law, we reverse the trial court's denial of Dr. Michelow's motion for summary judgment regarding Wargo's claims for fraudulent concealment and punitive damages and remand for the trial court to conduct a new trial on Wargo's medical malpractice claim. The apposite facts follow.

## Facts

{¶ 3} On December 18, 2006, Wargo underwent surgery to remove moles from her back and left eyebrow. Dr. Michelow was the plastic surgeon who performed the procedure. Because Wargo was nervous, the decision was made to put her under light anesthesia to sedate her. Nurse Lucinda Timberlake-Kwit was the assistant anesthesiologist for the surgery.

{¶ 4} The surgery required the use of an instrument to cauterize the area where the moles were located called a Bovie cautery ("Bovie"). Dr. Michelow successfully removed the mole from Wargo's back and then proceeded to remove the mole from her eyebrow. As soon as the Bovie was

activated, it set off a spark, which caused a flash fire. The oxygen remained on, which caused the fire. The surgical team reacted immediately and put out the fire within seconds. Despite this response, Wargo suffered second-degree burns to the left side of her face, neck, ear, and eyelid. Wargo's skin pigment healed, but there was some occasional blotchiness. She continues to have problems with her left eye.

{¶ 5} Wargo filed a medical malpractice claim against Drs. Bryan Michelow and Susan White,[2] and Nurse Lucinda Timberlake-Kwit. Wargo later amended her complaint to include a claim against Dr. Michelow for fraudulent concealment based on his failure to fully disclose the cause of the fire and the extent of her injuries. Dr. Michelow filed a motion for summary judgment on Wargo's claims for fraudulent concealment and punitive damages, which the trial court denied.

{¶ 6} The matter proceeded to a jury trial where the jury found Dr. Michelow had committed malpractice and had engaged in fraudulent concealment. Wargo was awarded $871,359 in compensatory damages and $425,000 in punitive damages.

{¶ 7} After the verdict, the parties filed numerous post-trial motions. Wargo filed a motion for prejudgment interest, which was granted, but her

---

[1]See appendix.

[2] White was voluntarily dismissed from the case with prejudice and Timberlake-Kwit received a defense verdict.

motion for attorney fees was denied. Dr. Michelow filed motions for enforcing the cap on noneconomic damages, to vacate the jury verdict, and for judgment notwithstanding the verdict ("JNOV") regarding the punitive damages, and for a new trial. The trial court denied all of Dr. Michelow's motions.

## Summary Judgment as to Fraudulent Concealment and Punitive Damages

{¶ 8} In his first assigned error, Dr. Michelow argues the trial court erred by denying his motion for summary judgment as to Wargo's claims for fraudulent concealment and punitive damages.

{¶ 9} Generally, "any error by a trial court in denying a motion for summary judgment is rendered moot or harmless if a subsequent trial on the same issues raised in the motion demonstrates that there were genuine issues of material fact supporting a judgment in favor of the party against whom the motion was made." *Continental Ins. Co. v. Whittington* (1994), 71 Ohio St.3d 150, 156, 642 N.E.2d 615.

{¶ 10} However, error in the denial of a summary judgment motion that presents a purely legal question is not rendered harmless by a subsequent trial on the merits. Id. at 158; *Capella III, L.L.C. v. Wilcox*, 190 Ohio App.3d 133, 139, 2010-Ohio-4746, 940 N.E.2d 1026. Consequently, an appellate court may review a denial of a motion seeking summary judgment on a pure question of law regardless of the movant's lack of success at trial.

*Sicklesmith v. Chester Hoist*, 169 Ohio App.3d 470, 2006-Ohio-6137, 863 N.E.2d 677, ¶183; *Kelley v. Ferraro*, Cuyahoga App. No. 92446, 2010-Ohio-4179. Here, Dr. Michelow argued he was entitled to summary judgment as a matter of law because Wargo failed to present the evidence necessary to prove her fraudulent concealment claim or evidence that she was entitled to punitive damages. Thus, a subsequent trial did not render harmless the asserted error in the denial of the summary judgment motion.

{¶ 11} We review an appeal from summary judgment under a de novo standard of review. *Baiko v. Mays* (2000), 140 Ohio App.3d 1, 746 N.E.2d 618, citing *Smiddy v. The Wedding Party, Inc.* (1987), 30 Ohio St.3d 35, 506 N.E.2d 212; *N.E. Ohio Apt. Assn. v. Cuyahoga Cty. Bd. of Commrs.* (1997), 121 Ohio App.3d 188, 699 N.E.2d 534. Accordingly, we afford no deference to the trial court's decision and independently review the record to determine whether summary judgment is appropriate. Under Civ.R. 56, summary judgment is appropriate when: (1) no genuine issue as to any material fact exists, (2) the party moving for summary judgment is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can reach only one conclusion that is adverse to the nonmoving party.

{¶ 12} In *Gaines v. Preterm-Cleveland, Inc.* (1987), 33 Ohio St.3d 54, 55, 514 N.E.2d 709, the Ohio Supreme Court set forth the elements for a cause of action of fraud in a medical malpractice action as follows:

"The elements of an action in actual fraud are: (a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it was true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance."

{¶ 13} Thus, "[a] physician's knowing misrepresentation of a material fact concerning a patient's condition, on which the patient justifiably relies to his detriment, may give rise to a cause of action in fraud independent from an action in medical malpractice." Id. citing, Annotation (1973), 49 A.L.R.3d 501, 506; *Leach v. Shapiro* (1984), 13 Ohio App.3d 393, 397, 469 N.E.2d 1047.

{¶ 14} In *Gaines*, the doctor allegedly told his patient that he had removed an intrauterine device as she had requested when, in fact, he had not done so. Over three years later, the patient discovered that the IUD had not been removed and that it had perforated her uterus. Under these circumstances, the supreme court concluded that a doctor's knowing misrepresentation of a material fact concerning a patient's condition, on which the patient justifiably relied to her detriment, could give rise to a cause of action in fraud independent from an action in medical malpractice.

{¶ 15} In the instant case, there was no evidence that Wargo justifiably relied upon any representation made by Dr. Michelow. Wargo was well aware that she suffered burns that were not an intended part of the treatment, and Dr. Michelow told her that the Bovie had caught fire. Therefore, there was no concealment of the fact she was burned. Moreover, according to her deposition, she knew the next morning when she went to MetroHealth's burn unit that the exposure to oxygen had caused the Bovie to ignite. She informed the burn unit "we knew there was a fire and assumed it was from oxygen and a spark." Her intake record at the burn unit also indicated that the fire was caused by oxygen in the operating room. Whether she provided the information to the burn unit or they provided it to her, less than 24 hours after the incident, she was aware of what caused the fire.

{¶ 16} There is no evidence of concealment as to Wargo's medical condition. She was well aware she was burned. In Dr. Michelow's operative report, he also noted "partial thickness injury" to Wargo's cheek, ear, and neck, which is consistent with a second-degree burn. Moreover, the fact he had a senior plastic surgeon immediately evaluate Wargo's condition shows it would have been impossible for Dr. Michelow to have concealed her injuries. Also, the burn unit diagnosed Wargo the next morning as having second-degree burns. So, even if she was misled in anyway concerning the extent of her injuries, by the next morning, she would have definitely been aware she had second-degree burns.

{¶ 17} There is also no evidence that the doctor's failure to tell her the cause of the fire impacted her post-surgery treatment. There was no delay in her receiving treatment as the doctor immediately contacted the senior plastic surgeon and an opthamologist to evaluate Wargo, and she immediately received treatment. The next morning at MetroHealth, she received the same diagnoses of second-degree burns and was prescribed the same treatment prescribed by Dr. Michelow.

{¶ 18} There is also no evidence that the doctor's failure to reveal the cause of the fire impacted her ability to bring a medical malpractice suit. According to Wargo's father, by the next evening, he had consulted with an attorney regarding the incident. Therefore, the doctor's alleged failure to tell her about the oxygen did not result in Wargo's suffering injuries separate from her medical malpractice claim.

{¶ 19} Wargo argued that she was psychologically harmed by the doctor's failure to disclose the cause of the fire, causing her to have a "rational fear of physical peril." It is undisputed that Wargo did not suffer any physical injury as a result of the doctor's alleged fraudulent concealment because, after the fire, she received appropriate medical treatment with no delay; therefore, any additional injury would have been purely emotional, and no doubt a result of the incident. Any physical injury was caused by the medical malpractice. See *Prysock v. Bahner, M.D.*, 10th Dist. No. 03AP-1245, 2004-Ohio-3381 (no compensable injury for fraud due to doctor's

alleged nondisclosure because the damages were the same for medical malpractice).

{¶ 20} In *Prysock*, the court acknowledged that "a plaintiff claiming emotional distress without contemporaneous physical injuries must demonstrate that he or she was in fear of physical consequences to his or her person." Id. at ¶12. However, "[a] plaintiff cannot recover for emotional distress 'where the distress is caused by plaintiff's fear of a nonexistent physical peril.'" Id., quoting, *Criswell v. Brentwood Hosp.* (1989), 49 Ohio App.3d 163, 165-166, 551 N.E.2d 1315. There is no reason that Wargo would have a fear of physical peril based on the doctor's failure to tell her the cause of the fire because the alleged nondisclosure did not cause her any physical harm nor was she in danger of physical harm.

{¶ 21} Additionally, the evidence does not support Wargo's claim that the doctor attempted to conceal the malpractice. Immediately after the incident, he had another plastic surgeon and an opthamologist both examine Wargo. Also, in his report he had written: "Cautery was applied to the base of the open operative wound. At this moment, a flash flame was noted. The mask was immediately removed. The oxygen was turned off." The anesthesia record written by Timberlake-Kwit, stated: "After the nevus was excised, Bovie was used to cauterize the skin. I was at the head of the bed throughout procedure and noticed an immediate spark, O2 immediately turned off, etc." These records were available to Wargo and indicate no

intent to conceal or alter what had occurred. It appears Wargo believes that Dr. Michelow should have immediately accepted blame for the cause of the fire, but the cause and responsibility for the fire are matters resolved as part of Wargo's medical malpractice claim. See *Katz v. Guyuron* (July 6, 2000), Cuyahoga App. No. 76342, the doctor's failure to fully disclose the patient's condition was related to the patient's malpractice claim; thus, it did not create an independent claim for fraud.

{¶ 22} There was also no evidence of actual malice that would have supported a punitive damages claim. The Ohio Supreme Court in *Preston v. Murty* (1987), 32 Ohio St.3d 334, 512 N.E.2d 1174, defined "actual malice" in pertinent part as "a conscious disregard for the right and safety of other persons that has a great probability of causing substantial harm." There is no evidence that Dr. Michelow exhibited a conscious disregard for Wargo's safety. Wargo was told a fire occurred. Immediately following the fire, Wargo was evaluated by a plastic surgeon and opthamologist and provided treatment. The fact the doctor failed to tell Wargo the exact cause of the fire or accept blame for the fire did not cause substantial harm, nor did it even create a probability of causing substantial harm to Wargo.

{¶ 23} Accordingly, we conclude that Wargo's claims for fraudulent concealment and punitive damages fail as a matter of law; thus, the trial court erred by not granting summary judgment in favor of Dr. Michelow. As a result of the trial court's failure to grant summary judgment and allowing

the fraudulent concealment claim to go to the jury, the trial as to Wargo's malpractice claim was prejudicially tainted by the focus on the doctor's alleged fraudulent concealment. We, therefore, remand the matter for a new trial on Wargo's medical malpractice claim.

{¶ 24} The remaining assigned errors and Wargo's cross-appeal are rendered moot by our disposition of Dr. Michelow's first assigned error. Therefore, we need not address them. App.R. 12(A)(1)(c).

Judgment reversed and case remanded.

It is ordered that appellants recover from the appellee the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
PATRICIA ANN BLACKMON, PRESIDING JUDGE

MELODY J. STEWART, J., and
COLLEEN CONWAY COONEY, J., CONCUR

## APPENDIX

### Assignments of Error

"I.   The trial court erred in denying defendants-appellants' motion for partial summary judgment on plaintiff-appellee's claims for fraud, concealment, and punitive damages."

"II.   The trial court erred in denying defendants-appellants' motion to bifurcate trial of plaintiff-appellee's claims for compensatory and punitive damages."

"III.   The trial court erred in denying defendants-appellants' motion for directed verdict on plaintiff-appellee's claims for fraud, concealment, and punitive damages."

"IV.   The trial court erred in its jury charge pertaining to plaintiff-appellee's claims for fraud, concealment, and punitive damages."

"V.   The trial court erred in failing to properly use general verdict forms pursuant to Civ.R. 49."

"VI.   The trial court erred in granting plaintiff-appellee's motion for partial summary judgment that a permanent and substantial physical deformity was sustained and, therefore, erred in applying the $500,000 cap on non-economic damages as a matter of law."

"VII.   The trial court erred in holding that the punitive damages cap in R.C. 2315.21(D)(2) and the non-economic damages cap in R.C. 2323.43 are unconstitutional."

"VIII.   The trial court abused its discretion in granting plaintiff-appellee's motion for prejudgment interest."

Cross-Appeal

"I.   The trial court abused its discretion when it denied plaintiff's motion for fees and expenses under Rule 37 of the Civil Rules."

"II.   The trial court improperly denied plaintiff's motion for fees based on the jury's award of punitive damages."