[Cite as *Swoope v. Osagie*, 2016-Ohio-8046.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 103938**

---

## KAROLE J. SWOOPE

PLAINTIFF-APPELLEE

vs.

## OSARO IGHO OSAGIE

DEFENDANT-APPELLANT

---

**JUDGMENT:**
AFFIRMED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-14-826270

**BEFORE:** Celebrezze, J., Kilbane, P.J., and Boyle, J.

**RELEASED AND JOURNALIZED:** December 8, 2016

**ATTORNEYS FOR APPELLANT**

James E. Boulas
Jim Petropouleas
James E. Boulas Co., L.P.A.
Raintree Plaza
7912 Broadview Road
Broadview Heights, Ohio 44147


**ATTORNEY FOR APPELLEE**

Nicole C. Longino
11811 Shaker Blvd., #420
Cleveland, Ohio 44120

FRANK D. CELEBREZZE, JR., J.:

{¶1} Defendant-appellant, Osaro Igho Osagie ("appellant"), appeals the judgment entered on a jury verdict in favor of plaintiff-appellee, Karole Swoope ("Swoope"), for defamation. Appellant argues that the trial court erred by denying his motion for summary judgment and admitting the report from Cuyahoga County Board of Developmental Disabilities ("CCBDD") investigator, Patricia Kresevic ("Kresevic"), into evidence. Furthermore, appellant argues that the jury's verdict was against the manifest weight of the evidence. After a thorough review of the record and law, this court affirms.

## I. Factual and Procedural History

{¶2} The instant matter arose from a dispute between appellant and Swoope regarding the home health care services that Swoope was providing for S.J. S.J. is the daughter of appellant's girlfriend, Consuela Hill ("Hill"); she has severe physical and developmental disabilities and requires "total care." Swoope provided home health care services for S.J. for approximately 18 years. Nurse Cynthia Moore ("Moore") also provided care for S.J. for more than 20 years.

{¶3} In 2008, appellant moved into Hill's residence and became concerned about the conduct of Swoope and Moore while they were caring for S.J. Specifically, appellant noticed that the nurses were cooking meals in the home, taking meals home with them, bringing visitors into the home without permission, and making personal calls on their cell phones. Appellant communicated his concerns to Hill. According to Hill,

she addressed these concerns with Swoope and Moore; Hill instructed them to refrain from having visitors to the house, cooking on the stove, and using their cell phones excessively. Moore complied with Hill's instructions; appellant and Hill maintain that Swoope did not.

{¶4} The parties dispute the nature of the relationship between appellant and Swoope. Swoope contends that appellant is superstitious about left-handed people and believes that they are evil. Swoope suggests that when appellant learned that she was left-handed, he began to bully her. Specifically, Swoope claims that appellant would lock the door when she went outside, put her coffee pot on the floor because he did not want her making coffee on her breaks, and ignore her when she arrived at work and said hello. On the other hand, appellant contends that he did not have any animosity towards Swoope and that it was Swoope who began to ignore him because she was mad that he made Hill aware of his concerns about Swoope's conduct.

{¶5} On February 7, 2014, the discord between appellant and Swoope came to a head. Appellant and Swoope got into a heated argument after appellant discovered that Swoope was heating up a pizza in the oven. The parties offered conflicting accounts of the incident. Immediately after the incident, appellant filed a major unusual incident report ("complaint") to the CCBDD alleging that Swoope was neglecting S.J. Appellant's complaint was titled "[n]eglect of an [i]ndividual" and alleged that

> [S.J.] is not receiving the care she deserves from her home [n]urse. She has been left unattended and uncared for [on] many occasions. The nurse responsible for her care is [Swoope]. When [Swoope] is on duty, she is either on the phone addressing family issues or some cases cooking and

sometimes bringing unwanted visitors or guest[s] to the house, thereby violating the client's privacy (H[I]PPA). The mother of [S.J.] has addressed this issue with [Swoope] on several occasions and it's very imperative that the supervisor / manager should intervene before the life of this innocent individual is jeopardized due [to] the negligence of [Swoope] whose responsibility is to care for the client by following [the individual service plan]. Today she was in the kitchen cooking in private residence and the client she's responsible for has been under the weather for two days, coughing. When ask[ed] to take care of the individual [Swoope] is here for, she went berserk.

The parties dispute whether Hill terminated Swoope's services as a result of the incident. Nevertheless, Swoope was suspended as S.J.'s caregiver pending an investigation of the allegations.

{¶6} Kresevic investigated the allegations in appellant's complaint. Kresevic concluded that the neglect allegation was unsubstantiated. As a result, Swoope was not disciplined. Kresevic prepared and submitted a "Protocol Investigation Report" ("report") and summary detailing the results of her investigation.

{¶7} On May 2, 2014, Swoope filed a complaint against appellant alleging a claim for defamation. Swoope alleged that as a result of appellant's defamatory statements, she lost her job working with S.J. and $2,900 monthly income, her name went on file with the state of Ohio, and her name was published in a magazine, thus affecting her ability to obtain other employment opportunities and damaging her reputation in the amount of $300,000.

{¶8} The parties exchanged discovery and conducted depositions. Appellant moved for summary judgment based on the truth of his statement, common law qualified privilege, and statutory privilege. Swoope filed an objection and response to appellant's

summary judgment motion, and attached her affidavit, Kresevic's report, and an affidavit from Kresevic thereto. Appellant moved to strike Swoope's pleading and the attached exhibits, including Kresevic's report, arguing that (1) Swoope's affidavit contained self-serving statements and inadmissible hearsay, (2) Kresevic's report contained inadmissible hearsay, and (3) Kresevic's report contained information about S.J.'s medical conditions. The trial court granted appellant's motion to strike in part, ordering the portions of Swoope's affidavit that contained inadmissible hearsay to be stricken. Furthermore, the trial court granted Swoope's motion to restrict public access to Kresevic's report and to redact S.J.'s medical information from the report.

{¶9} On May 14, 2015, the trial court denied appellant's motion for summary judgment. Thereafter, appellant filed a motion in limine to exclude Kresevic's report from being admitted at trial. Specifically, appellant argued again that the report contained inadmissible hearsay, and that Kresevic lacked firsthand knowledge of the issues addressed in the report. The trial court denied appellant's motion in limine.

{¶10} A jury trial commenced on July 8, 2015. At the close of trial, the jury returned a verdict in favor of Swoope. The jury awarded Swoope $44,602 in compensatory damages, $20,000 in punitive damages, and attorney fees. The trial court subsequently held a hearing and awarded Swoope $25,750 in attorney fees.

{¶11} Appellant filed the instant appeal assigning three errors for review:

I. The trial court erred as a matter of law in denying [appellant's] motion for summary judgment.

II. The trial court erred as a matter of law in allowing [Kresevic's report] to be introduced in trial.

III. The jury verdict finding [appellant] liable for defamation and awarding [Swoope] damages is against the manifest weight of the evidence.

For ease of discussion, we address appellant's assignments of error out of order.

## II. Law and Analysis

## A. Kresevic's Report

{¶12} In his second assignment of error, appellant argues that the trial court erred by admitting Kresevic's report at trial. Specifically, appellant contends that the report is "primarily comprised of hearsay and the conclusion reached by [Kresevic] is based upon such hearsay and is inadmissible." Furthermore, appellant argues that Kresevic did not have firsthand knowledge of the matters in the report.

{¶13} Before trial commenced, appellant filed a motion in limine seeking to exclude the report from being admitted at trial. Therein, appellant argued that the report was inadmissible hearsay and that Kresevic lacked firsthand knowledge of the issues addressed in the report. The trial court denied appellant's motion in limine on July 6, 2015. Two days later, due to the unavailability of the originally assigned judge, the matter was transferred to the docket of a visiting judge. Appellant asserts that after the matter was transferred, but before trial commenced, "a conversation was had between [appellant's counsel] and the [visiting judge] wherein [appellant's counsel] raised the issue of the inadmissibility of the [report]."[1] Appellant's brief at 6. Appellant suggests

---

[1] There is no record of appellant's counsel raising this issue with the visiting judge.

that the visiting judge permitted the report to be introduced at trial because she did not want to undermine the originally assigned judge's denial of the motion in limine.

{¶14} The decision whether to admit or to exclude evidence rests within the sound discretion of the trial court. *State v. Brown*, 8th Dist. Cuyahoga No. 99024, 2013-Ohio-3134, ¶ 50, citing *State v. Jacks*, 63 Ohio App.3d 200, 207, 578 N.E.2d 512 (8th Dist.1989). Generally, absent an abuse of that discretion, a trial court's decision on the admission of evidence will not be disturbed. *Cleveland v. Lowery*, 8th Dist. Cuyahoga No. 103722, 2016-Ohio-5626, ¶ 8, citing *Shimola v. Cleveland*, 89 Ohio App.3d 505, 511, 625 N.E.2d 626 (8th Dist.1992). An abuse of discretion requires a finding that the trial court's decision was unreasonable, arbitrary, or unconscionable. *State v. Minifee*, 8th Dist. Cuyahoga No. 99202, 2013-Ohio-3146, ¶ 23, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶15} Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Evid.R. 802 provides that hearsay is inadmissible into evidence except under specifically delineated circumstances.

{¶16} One such exception, commonly referred to as the "public records exception" or "official records exception," is contained in Evid.R. 803(8), which provides

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (a) the activities of the office or agency, or (b) matters observed pursuant to duty imposed by law as to which matters

there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, unless offered by defendant, unless the sources of information or other circumstances indicate lack of trustworthiness.

**{¶17}** In the instant matter, appellant contends that Kresevic's report is inadmissible under Evid.R. 803(8) because she lacked firsthand knowledge of the matters in the report. Appellant directs this court to *Cincinnati Ins. Co. v. Volkswagen of Am. Inc.*, 41 Ohio App.3d 239, 535 N.E.2d 702 (10th Dist.1987), where the appellate court held

> for a document to be admissible under Evid.R. 803(8)(b), the observations of the reporter must occur pursuant to a legally imposed duty and the matters observed must be the subject of a duty to report. Moreover, the observations must be either the firsthand observations of the official making the report or of one with a duty to report to a public official.

*Id*. at 242.

**{¶18}** After reviewing the record, we find no merit to appellant's contention that Kresevic lacked firsthand knowledge of the matters in the report. The CCBDD's Major Unusual Incident ("MUI") Department, as authorized by law, oversees investigations regarding abuse or neglect of developmentally disabled individuals. Kresevic testified that the MUI Department is "an investigation unit, the aspect of the board where we are mandated by the [s]tate of Ohio to investigate any reports of abuse, neglect, misappropriation. We also do investigations of hospitalizations. The incidents that happen with consumers are involved with the county board and come to our attention."

**{¶19}** As an agent of the MUI Department, Kresevic initiated an investigation after appellant filed the complaint alleging that Swoope was neglecting S.J. Kresevic

explained that she prepared and submitted the investigation report detailing the results of her investigation. In conducting the investigation, Kresevic interviewed Hill, appellant, Swoope, S.J.'s caseworker Todd Gregorich ("Gregorich"), and nursing supervisor Sophia Woodson.

{¶20} Accordingly, we find that Kresevic's report is an official record of the CCBDD. Furthermore, because the report reflects Kresevic's observations and findings throughout the course of her investigation, we find that Kresevic had firsthand knowledge of the matters contained therein. Thus, the report is admissible under Evid.R. 803(8).

{¶21} We also find that Kresevic's report was properly authenticated pursuant to Evid.R. 902(4), governing certified copies of public records, which provides, in relevant part

> extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to * * * [a] copy of an official record or report or entry therein, or of a document authorized by law to be recorded or filed and actually recorded or filed in a public office, including data compilations in any form, certified as correct by the custodian or other person authorized to make the certification, by certificate complying with paragraph (1), (2), or (3) of this rule or complying with any law of a jurisdiction, state or federal, or rule prescribed by the Supreme Court of Ohio.

{¶22} In the instant matter, Kresevic testified that the report is maintained by CCBDD's Department of Program Review and Provider Support. Carol Johnson,

Records Supervisor/Custodian of Records, supervised the maintenance of the report. Kresevic testified that Johnson provided a certified copy of the report and a certification letter to Swoope's counsel. Kresevic further asserted that the certified copy of the report provided to Swoope's counsel is an "accurate, authentic copy of [the] report and contains information obtained by [Kresevic], personally, during [her] thorough investigation of this matter."

{¶23} For all of the foregoing reasons, we find that the trial court did not abuse its discretion by admitting Kresevic's report. Appellant's second assignment of error is overruled.

### B. Manifest Weight

{¶24} In his third assignment of error, appellant argues that the jury's verdict on the defamation claim was against the manifest weight of the evidence.

### 1. Standard of Review

{¶25} When reviewing the manifest weight of the evidence in a civil case, this court weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 20. A verdict supported by some competent, credible evidence going to all the essential elements of the case must not be reversed as being against the manifest weight of the evidence. *Domaradzki v. Sliwinski*, 8th Dist.

Cuyahoga No. 94975, 2011-Ohio-2259, ¶ 6; *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978), syllabus.

{¶26} Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *Black's Law Dictionary* 1594 (6th Ed.1990).

{¶27} We are guided by a presumption that the findings of the trier of fact are correct. *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). This presumption arises because the trier of fact had an opportunity "to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Id.*

### 2. Defamation

{¶28} Defamation is a false publication that injures a person's reputation, exposes the person to public hatred, contempt, ridicule, shame or disgrace, or affects the person adversely in his or her trade or business. *Barner v. Kroehle*, 8th Dist. Cuyahoga No. 87557, 2006-Ohio-5569, ¶ 13, citing *Matalka v. Lagemann*, 21 Ohio App.3d 134, 486 N.E.2d 1220 (10th Dist.1985). To establish a claim for defamation, a plaintiff must show (1) a false statement of fact was made about the plaintiff, (2) the statement was defamatory, (3) the statement was published, (4) the plaintiff suffered injury as a proximate result of the publication, and (5) the defendant acted with the requisite degree of fault in publishing the statement. *Am. Chem. Soc. v. Leadscope, Inc.*, 133 Ohio St.3d

366, 2012-Ohio-4193, 978 N.E.2d 832, ¶ 77, citing *Pollock v. Rashid*, 117 Ohio App.3d 361, 368, 690 N.E.2d 903 (1st Dist.1996); *see also Lucas v. Perciak*, 8th Dist. Cuyahoga No. 96962, 2012-Ohio-88, ¶ 12, citing *Akron-Canton Waste Oil, Inc. v. Safety-Kleen Oil Servs., Inc.*, 81 Ohio App.3d 591, 601, 611 N.E.2d 955 (9th Dist.1992).

{¶29} Courts distinguish between defamation per se and defamation per quod. "'Defamation per se occurs when material is defamatory on its face; defamation per quod occurs when material is defamatory through interpretation or innuendo.'" *N.E. Ohio Elite Gymnastics Training Ctr., Inc. v. Osborne*, 183 Ohio App.3d 104, 2009-Ohio-2612, 916 N.E.2d 484, ¶ 7 (9th Dist.), quoting *Gosden v. Louis*, 116 Ohio App.3d 195, 206-207, 687 N.E.2d 481 (9th Dist.1996). A statement is defamatory per se, if, on its face, "it reflects upon a person's character in a manner that will cause him to be ridiculed, hated, or held in contempt; or *in a manner that will injure him in his trade or profession*." (Emphasis added.) *Gosden* at 207, citing *Becker v. Toulmin*, 165 Ohio St. 549, 553, 138 N.E.2d 391 (1956), *Westropp v. E.W. Scripps Co.*, 148 Ohio St. 365, 373-374, 74 N.E.2d 340 (1947), and *Cleveland Leader Printing Co. v. Nethersole*, 84 Ohio St. 118, 95 N.E. 735 (1911). *Accord Ratkosky v. CSX Transp., Inc.*, 8th Dist. Cuyahoga No. 92061, 2009-Ohio-5690, ¶ 46.

{¶30} In the instant matter, Swoope's defamation claim is based on her assertion that appellant falsely notified the CCBDD that she was neglecting S.J., jeopardizing S.J.'s life, and acting unprofessionally, knowing that it was untrue. These statements undoubtedly tend to injure Swoope in her trade or occupation as a licensed practical nurse

and home health care provider. Thus, this is a claim for defamation per se. Unless published on a privileged occasion, words that are defamatory per se normally carry a presumption of falsity, damages, and malice. *Wampler v. Higgins*, 93 Ohio St.3d 111, 127, 752 N.E.2d 962 (2001), fn. 8.

**{¶31}** In support of his manifest weight challenge, appellant argues that the evidence at trial demonstrated that (1) the allegations in his complaint were true, (2) Swoope was not damaged by the complaint, (3) his statements were privileged, and (4) the jury's verdict "was influenced by passion or prejudice."

### 3. Substantial Truth Doctrine

**{¶32}** Appellant contends that "the overwhelming evidence proved that [his] CCBDD complaint was not false." Appellant's brief at 39. We disagree.

**{¶33}** While a plaintiff must prove falsity as an element of a defamation claim, a publisher may also "completely defend" a defamation action "by showing that the gist, or imputation, of the [defamatory] statement is substantially true, and hence, the statement is not false." *Sweitzer v. Outlet Communications, Inc.,* 133 Ohio App.3d 102, 110, 726 N.E.2d 1084 (10th Dist.1999), citing *Natl. Medic Servs. Corp. v. E.W. Scripps Co.*, 61 Ohio App.3d 752, 755, 573 N.E.2d 1148 (1st Dist.1989); *see also Stohlmann v. WJW TV, Inc.*, 8th Dist. Cuyahoga No. 86491, 2006-Ohio-6408, ¶ 13 ("Truth is an absolute defense to defamation."), citing *Krems v. Univ. Hosps. of Cleveland*, 133 Ohio App.3d 6, 726 N.E.2d 1016 (8th Dist.1999); *Bruss v. Vindicator Printing Co.*, 109 Ohio App.3d 396, 400, 672 N.E.2d 238 (7th Dist.1996) (material falsity is an essential element to a

defamation claim). Whether a defamatory statement is substantially true is generally a question of fact for the jury to decide. *Young v. Gannett Satellite Information Network*, 837 F.Supp.2d 758, 764 (S.D.Ohio 2011), citing *Sweitzer* at 110.

**{¶34}** In the instant matter, the jury determined that the defamatory statements in appellant's complaint were not substantially true. After thorough review, we find that the record demonstrates there was competent, credible evidence presented to establish that appellant falsely accused Swoope of neglecting S.J. and engaging in unprofessional conduct.

**{¶35}** Swoope presented the testimony of Hill, Kresevic, appellant, and Swoope; appellant presented the testimony of Moore, Hill, and appellant.

**{¶36}** First, regarding appellant's negligence allegation, Hill testified that S.J.'s pulse oximeter is used to "check about shortness of breath. It shows what a person's heart rate is if they are running into a little trouble and they are not breathing well. We usually use it if you're gone out of the room long periods of time. You can't hear [S.J.], she can't talk. [S.J.] has a trach[eostomy],[2] so she's not verbal." Hill testified that she would not put the pulse oximeter on S.J. if she was going to the bathroom or the kitchen. Hill stated that she uses the pulse oximeter more when S.J. is not feeling well. During Hill's February 18, 2014 interview with Kresevic, Hill reported that she had never questioned anything about the care that S.J. receives and that the care has always been the best. Hill stated that she believes S.J. is alive because of the wonderful care that the

---

[2] A tracheostomy tube is used to clear airways enabling an individual to breathe properly.

nurses have provided for S.J. Hill reported that Swoope did not neglect S.J. and that Swoope has always been very professional in her home.

{¶37} Regarding appellant's allegation that Swoope was acting unprofessionally, Hill testified that she asked both Moore and Swoope not to cook in the kitchen and not to have company at the house. Hill explained that Swoope had guests at the house, including her infant granddaughter and her son. Hill testified about an incident during which she came home from work and discovered that Swoope had her granddaughter at the house while she was taking care of S.J. Hill testified that cooking full meals in the kitchen is unacceptable, but heating up lunch is different. Hill stated that she asked all of the nurses to use the microwave instead of the oven. Hill asserted that she addressed the issue of excessive cell phone use with Swoope. During Kresevic's interview, Hill reported that she allows the nurses to use the stove and microwave to heat up food because they are not able to leave the home for lunch.

{¶38} Hill provided the following description of the February 7, 2014 incident:

> My father texted me and told me that [Swoope] and [appellant] were in the kitchen arguing over the stove. And then I called [appellant] to ask him what was going on and I can hear [Swoope] in the background telling [appellant] he doesn't pay rent, he's not [Hill's] husband and he's not telling her what to do.

Hill explained that Swoope's tone was "[v]ery nasty and loud" and that appellant was speaking to her calmly. Hill testified that after the February 7, 2014 incident, she had "had it," suggesting that she fired Swoope.

{¶39} Hill testified that she did not agree with the contents of Kresevic's report. Hill acknowledged that her description of the February 7, 2014 incident during Kresevic's interview was completely different than the account of the incident that she gave at trial. Hill further acknowledged that she told Kresevic that Swoope did not neglect S.J. However, Hill claimed that she did not disclose Swoope's neglect because Swoope's family "called [her] and asked [her] not to because [they] did not want anything on [Swoope's] license." Hill testified that she lied to Kresevic to protect Swoope's license. Hill asserted that she chose to terminate Swoope's services because she could no longer trust her.

{¶40} Second, regarding appellant's negligence allegation, Kresevic explained that Hill told Gregorich that "[Hill] does not share the same concerns as [appellant]" regarding the care that Swoope provided to S.J. Kresevic testified that although the complaint alleged Swoope left S.J. alone on "many occasions," the first time that appellant reported Swoope's alleged negligence was on February 7, 2014. Kresevic confirmed that there is not an "eyes-on" provision in S.J.'s individual service plan. After conducting her investigation, Kresevic concluded that appellant's allegation of neglect was "[u]nsubstantiated/[i]nsufficient [e]vidence." Kresevic did not find appellant to be credible in his report of the incident. Furthermore, Kresevic's report reflected, in relevant part, that "there was no evidence to support [appellant's] claims that [Swoope] was not providing care for [S.J.]" and "[Hill] denied any concerns about [S.J.'s] care,

citing that [Swoope] has been with her family for the past 19 years and has provided excellent care."

{¶41} Third, regarding his negligence allegation, appellant explained why he believed that Swoope was neglecting S.J.:

> there was nobody watching S.J. when [the nurses] are all in the kitchen cooking. There is nobody. [S.J. is] just left unattended. That's neglect. There is no active treatment. Active treatment is when you sit with a client, you interact, you do activities with a client. It could be watching movies, listening to music, telling jokes, reading storybook. These are active treatment, or it could be when you go out to work like when you push a wheelchair, that's active treatment.

{¶42} Regarding his allegation that Swoope was acting unprofessionally, appellant testified that when Swoope brought a baby into S.J.'s room, he wanted to call the police because it was a violation of S.J.'s privacy. Appellant stated that all of S.J.'s nurses, including Swoope, cook dinner at the house, load it into their cars, and take it home with them. He testified that Swoope "always" cooked for family members and brought the food home with her. Appellant testified that although he never told Swoope not to use the stove, Hill instructed Swoope not to cook at the house. Appellant explained that he cannot sleep when Swoope is talking on the phone at Hill's house.

{¶43} Appellant asserted that the February 7, 2014 incident lasted between five and 15 minutes. Appellant suggested that Swoope's conduct during the incident constituted domestic violence: "[Swoope] followed me. Briskly. She was right behind me. Then she pushed me. That was a domestic. You can't lay your hands on me."

**{¶44}** Appellant claimed that Kresevic lied when she put in her report that appellant said Swoope was heating up food even though she was not allowed to do so. Appellant further asserted that Kresevic lied when she wrote in her report that appellant does not like left-handed people.

**{¶45}** Fourth, regarding appellant's negligence allegation, Swoope explained the ways that she could tell if something was wrong with S.J. Specifically, Swoope testified that if S.J. was out of sight, she would be able to hear if something was wrong: "[y]ou would hear her coughing up. You would hear the noise she would make. You would hear that." Swoope confirmed that if S.J. had been coughing during the February 7, 2014 incident, which took place in the kitchen, Swoope would have been able to hear her. Swoope testified that she would use S.J.'s pulse oximeter if she was going away for ten to 15 minutes. Swoope explained that if S.J. was sick, this time frame would go down.

**{¶46}** Regarding appellant's allegation that she was acting unprofessionally, Swoope testified that she never had a baby at Hill's house. Swoope denied being on the phone excessively, and denied leaving S.J. unattended to entertain guests. Swoope explained that her son came over to Hill's house on one occasion. Swoope stated that Hill allowed her to use the oven and never told her to stop using the oven and stove.

**{¶47}** Swoope provided the following description of the February 7, 2014 incident:

> I came to work early at [Hill's] request. * * * So I got S.J. settled and everything and I went and put the pizza in the oven and came back [to S.J.'s room]. I'm sitting in S.J.'s room and I hear somebody running down through the hallway saying, [to Hill's father], are you cooking a pizza? And [Hill's father] said no, I think [Swoope] is cooking a pizza.

So I came out of [S.J.'s] room and I said to [appellant], no, that's me. I have the pizza in the oven.

By this time, [appellant] walked back to the kitchen and I followed him. I said no, I have that, that's me, I have that pizza in the oven.

[Appellant] says to me, you are the babysitter. You are not family. You don't cook in this kitchen. You don't use this oven.

* * * I said to him, and you are not family, either, and this is not your stove and [Hill] didn't tell me I could not use this stove.

You are not family. I pay bills here. Not your stove. You are just a babysitter, that is all. You are not family.

I said, and you are not family, either.

He [had] taken the pizza out of the oven.

**{¶48}** Swoope explained that after arguing with appellant, she left the kitchen and that Hill's father took her arm, told her to forget about the argument, and stated that he would buy her a pizza. Swoope denied touching or putting her hands on appellant. She stated that she was screaming at appellant and that he was screaming back at her. Swoope guessed that the argument lasted "maybe five minutes."

**{¶49}** Fifth, regarding appellant's negligence allegation, Moore testified that she has never known Swoope to be negligent in caring for S.J. Regarding appellant's allegation that Swoope was acting unprofessionally, Moore testified that every time she asked Hill about cooking, it had been okay. She explained, "I had a situation where I cooked all the time and when I mean cooking, I used to cook my family meals and take them to my family. * * * So that got to be a bit much after awhile. So I no longer cook that way. It was convenient." Moore testified that Swoope cooked meals for herself,

but she did not know if Swoope cooked meals for her family. Moore stated that her relationship with appellant is "good. Now we are good. We didn't start out that way in the beginning." Moore explained that in the beginning, appellant "threw off everything" and that appellant "may have felt that [Hill] is being taken advantage of [by the nurses] because [Hill] is really sweet. There was so much cooking going and everything going on. It wasn't professional, it really wasn't professional." Moore stated that when appellant moved in, "it changed things. It wasn't as easy going in terms of doing what you want to do. * * * [W]hat I was doing, it was just too comfortable. It was a little bit too much." Moore testified that she has never known Swoope to be negligent in caring for S.J.

{¶50} Based on the foregoing testimony, we find that the record contains competent, credible evidence to support the jury's conclusion that the statements in appellant's complaint were not substantially true.

### 4. Common-Law Qualified Privilege

{¶51} Appellant argues that the evidence demonstrated that he was protected by common-law qualified privilege. We disagree.

{¶52} If a claimant establishes a prima facie case of defamation, a defendant may then invoke a conditional or qualified privilege. *A & B-Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council*, 73 Ohio St.3d 1, 7, 651 N.E.2d 1283 (1995), citing *Hahn v. Kotten*, 43 Ohio St.2d 237, 243, 331 N.E.2d 713 (1975). Ohio's common-law qualified privilege "applies in a variety of situations where society's

interest in compensating a person for loss of reputation is outweighed by a competing interest that demands protection." *A & B-Abell Elevator Co.* at 8. The privilege "does not attach to the communication, but to the occasion on which it is made." *Gilbert v. WNIR 100 FM*, 142 Ohio App.3d 725, 739, 756 N.E.2d 1263 (9th Dist.2001), citing *A & B-Abell Elevator Co.* at 8-9. The "essential elements" necessary to establish a common-law qualified privilege are "'good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion, and publication in a proper manner and to proper parties only.'" *Garofolo v. Fairview Park*, 8th Dist. Cuyahoga Nos. 92283 and 93021, 2009-Ohio-6456, ¶ 19, fn. 3, quoting *Hahn* at 244.

{¶53} A qualified privilege may be defeated only if a claimant proves with convincing clarity that a publisher acted with actual malice. *Jacobs v. Frank*, 60 Ohio St.3d 111, 573 N.E.2d 609 (1991), paragraph two of the syllabus. In the context of a defamation action, actual malice constitutes an "abuse of privilege." *A & B-Abell Elevator Co.* at 11. "Actual malice" is defined as "acting with knowledge that the statements are false or acting with reckless disregard as to their truth or falsity." *Jacobs* at *id.* Whether the evidence is sufficient to support a finding of actual malice is a question of law for the court to decide. *Lansky v. Rizzo*, 8th Dist. Cuyahoga No. 88356, 2007-Ohio-2500, ¶ 19; *Murray v. Chagrin Valley Publishing Co.*, 2014-Ohio-5442, 25 N.E.3d 1111, ¶ 7 (8th Dist.).

{¶54} Appellant contends that Swoope failed to present evidence of malice. We disagree. After thorough review, we find that the record demonstrates there was

competent, credible evidence presented to establish that appellant submitted the complaint with actual malice and in bad faith.

{¶55} Swoope asserted that on "two or three" occasions when the nurses were changing shifts, appellant would lock the door, stand in the kitchen while she continued to knock, and eventually let her inside. During her interview with Kresevic, Swoope reported that she always brought coffee in a coffee pot to work. Swoope stated that there were times that appellant put her coffee pot on the floor because he did not want her making coffee during her breaks. Swoope testified that Hill told her that appellant was mean and that he did not like Swoope; Hill instructed Swoope to just ignore appellant. Swoope told Moore that she did not speak with appellant because he was mean.

{¶56} Swoope explained why she believed that appellant filed the complaint of neglect:

[f]or the period of time that I have known him, I have never confronted him with anything that he has done for me, done to me. I think he submitted that report because he was shocked that I didn't allow him to bully me and mad as he could be and he submitted that report. But I think that the report was just the icing on the cake because he wanted me out of there. He's been wanting me out of there.

{¶57} Kresevic testified that "it appeared there wasn't a good relationship [between appellant and Swoope]." Swoope reported to Kresevic that she has always kept her distance from appellant.

{¶58} Appellant testified that he had already drafted the neglect complaint before the February 7, 2014 incident. In his motion for summary judgment, appellant claimed that he drafted a letter to the CCBDD regarding Swoope's conduct in early 2014 and

saved the draft on his computer. However, at trial, appellant testified that he drafted the complaint on the day that Swoope had her grandchild at the house while she was caring for S.J. The record reflects that the incident during which Swoope's grandchild was allegedly at Hill's house was between one and two years prior to the February 7, 2014 incident.

{¶59} Appellant testified that he sent the complaint to the CCBDD ten to 15 minutes after the incident. The MUI reporting system handbook provides that an individual is obligated to report incidents of neglect immediately, but no later than four hours after the incident. Appellant acknowledged that he waited at least one year from the time that he drafted the complaint to the time he submitted it. Appellant claimed that he waited to file the complaint because Hill told him not report the incident because Swoope would lose her license and Hill wanted to give Swoope an opportunity to change. Appellant stated that he filed the complaint on February 7, 2014, rather than on the day that he drafted the complaint, because the 2014 incident "was like a domestic. It's like you fight on the job. I was attacked. [Swoope] pushed me."

{¶60} Appellant testified that he was always friendly to Swoope and that he never ignored her. Appellant denied locking Swoope out of the house and denied touching Swoope's coffee pot. Appellant asserted that he has no African superstitions and that he is not superstitious about left-handed people. Appellant stated that he believed that he and Hill needed a surveillance camera in the house so Hill could "have an overview of the incident [involving Swoope] that is occurring in the house." Appellant explained that

after he raised his concerns about Swoope's conduct with Hill, Swoope became mad and would no longer speak to him.

{¶61} Based on the foregoing testimony, we find that the record contains competent, credible evidence to support the jury's conclusion that appellant acted with actual malice in submitting the complaint. The jury clearly did not believe appellant's assertion that he filed the complaint in good faith.

### 5. Statutory Privilege

{¶62} Appellant argues that the evidence demonstrated that he was protected by statutory privilege. We disagree.

{¶63} R.C. 5123.61(_)(1), governing the reporting of abuse, neglect, and other major unusual incidents, provides, in relevant part:

> [a]ny person listed in division (C)(2) of this section, having reason to believe that a person with mental retardation or a developmental disability has suffered or faces a substantial risk of suffering any wound, injury, disability, or condition of such a nature as to reasonably indicate abuse or neglect of that person, *shall immediately report* or cause reports to be made of such information to the entity specified in this division. Except as provided in section 5120.173 of the Revised Code or as otherwise provided in this division, the person making the report shall make it to a law enforcement agency or to the county board of developmental disabilities. * * * If the report concerns any act or omission of an employee of a county board of developmental disabilities, the report *immediately shall be made* to the department and to the county board.

(Emphasis added.) R.C. 5123.61(_)(2)(_) provides, in relevant part, that "any MR/DD employee[s], as defined in section 5123.50 of the Revised Code" are required to make a report under division (_)(1) of the statute. R.C. 5123.50(_) states that an "MR/DD employee" includes all of the following:

(1) An employee of the department of developmental disabilities;

(2) An employee of a county board of developmental disabilities;

(3) An employee in a position that includes providing specialized services to an individual with mental retardation or another developmental disability;

(4) An independent provider as defined in section 5123.16 of the Revised Code.

{¶64} The record reflects that appellant is employed by the Ohio Department of Developmental Disabilities. Thus, he was required to report instances of abuse or neglect of developmentally disabled individuals.

{¶65} Appellant directs this court to R.C. 5101.61(D), governing the reporting of abuse, neglect, or exploitation of an adult, which provides that

any person with reasonable cause to believe that an adult is suffering abuse, neglect, or exploitation who makes a report pursuant to this section or who testifies in any administrative or judicial proceeding arising from such a report, or any employee of the state or any of its subdivisions who is discharging responsibilities under section 5101.62 of the Revised Code shall be immune from civil or criminal liability on account of such investigation, report, or testimony, except liability for perjury, *unless the person has acted in bad faith or with malicious purpose*.

(Emphasis added.) Appellant cites this statute for the proposition that "individuals who report suspected abuse pursuant to the mandatory duty under R.C. 5123.61(_)(2)(_) are absolutely immune from criminal or civil liability[,] * * * even if the report is made

absent good faith."   Appellant's brief at 35.

{¶66} Appellant's interpretation of R.C. 5101.61(D) is incorrect.   The clear and unambiguous language of the statute indicates that immunity does not extend to persons acting in bad faith or with malicious purpose.

{¶67} As set forth above, the record contains competent, credible evidence to support the jury's conclusion that appellant submitted the complaint with actual malice and in bad faith.

## 6. Damages

{¶68} Appellant further argues that the jury's verdict was against the manifest weight of the evidence because Swoope failed to prove that she was damaged by his complaint.   We disagree.

{¶69} Swoope testified that she was suspended as S.J.'s caretaker after appellant submitted the complaint to the CCBDD.   She explained that Hill had to bring in another caretaker to meet S.J.'s needs during Kresevic's investigation.   Swoope explained that losing her job as S.J.'s nurse affected her mentally, emotionally, and financially. Swoope testified that she earned between $25,000 and $30,000 a year caring for S.J. Swoope has not been able to replace the income that she lost by working for another client.   Swoope stated, "I would tell [S.J.] I'm going to work here until one of us dies."

{¶70} Kresevic testified that when the CCBDD's MUI department receives a neglect allegation, the care giver against whom the allegation is made is either placed on administrative leave or removed from the home until an investigation is completed.   She

explained that if an allegation is found to be unsubstantiated, the guardian decides whether or not to bring the care giver back into the home. However, based on her experience, she stated that a guardian and care giver usually do not resume their working relationship after an allegation and investigation regarding neglect. Kresevic further testified that her report and appellant's negligence allegation against Swoope would be given to Swoope's employer and kept in Swoope's chart.

{¶71} In light of Swoope's and Kresevic's testimony, we find that the record contains competent, credible evidence to support the jury's conclusion that appellant's complaint caused damage to Swoope.

{¶72} For all of the foregoing reasons, we find that the jury's verdict is supported by competent and credible evidence. Swoope consistently denied the allegations in appellant's complaint. Swoope's trial testimony was consistent with her statements during her interview with Kresevic. Furthermore, Swoope's testimony was supported by Kresevic's testimony, Kresevic's report, and Hill's statements during her interview with Kresevic. On the other hand, Hill's trial testimony and affidavit directly contradicted her statements during Kresevic's interview.

{¶73} Swoope's theory of the case was that appellant falsely accused her of neglecting S.J. because he had a personal problem with her and no longer wanted her around Hill's home. On the other hand, appellant's theory of the case was that Swoope did, in fact, neglect S.J. and violate Hill's rules regarding cooking, having guests at the house, and cell phone use.

{¶74} The jury considered that Hill's statements to Kresevic on February 18, 2014 — 11 days after appellant filed the complaint — completely contradicted Hill's April 2, 2015 affidavit, and her trial testimony more than one year later. The jury considered that Kresevic did not find appellant to be credible in his report of the incident. The jury considered that Kresevic's testimony, particularly regarding her interview of Hill, corroborated Swoope's testimony rather than appellant's.

{¶75} In returning a verdict in favor of Swoope, the jury evidently found Swoope's and Kresevic's testimony to be more credible than appellant's and Hill's. We cannot say that the jury's verdict is against the manifest weight of the evidence simply because the jury found Swoope's version to be more credible than appellant's, nor that the jury clearly lost its way creating such a manifest miscarriage of justice.

{¶76} Accordingly, appellant's third assignment of error is overruled.

### C. Summary Judgment

{¶77} In his first assignment of error, appellant argues that the trial court erred by denying his motion for summary judgment.

{¶78} This court reviews an appeal from summary judgment under a de novo standard of review. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). We accord no deference to the trial court's decision and independently review the record to determine whether summary judgment is appropriate.

{¶79} Pursuant to Civ.R. 56, summary judgment is appropriate when (1) no genuine issue as to any material fact exists, (2) the party moving for summary judgment is

entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can reach only one conclusion that is adverse to the nonmoving party.

**{¶80}** On a motion for summary judgment, the moving party carries an initial burden of identifying specific facts in the record that demonstrate his or her entitlement to summary judgment. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264 (1996). If the moving party fails to meet this burden, summary judgment is not appropriate. However, if the moving party meets this burden, the nonmoving party has the reciprocal burden to point to evidence of specific facts in the record demonstrating the existence of a genuine issue of material fact for trial. *Id*. at 293. Summary judgment is appropriate if the nonmoving party fails to meet this burden. *Id*.

**{¶81}** In a defamation action, the entry of summary judgment in a defendant's favor is appropriate if it appears, based on the uncontroverted facts of the record, that any one of the five elements outlined above cannot be established with convincing clarity. *Temethy v. Huntington Bancshares, Inc.*, 8th Dist. Cuyahoga No. 83291, 2004-Ohio-1253, ¶ 14, citing *Dupler v. Mansfield Journal Co.*, 64 Ohio St.2d 116, 413 N.E.2d 1187 (1980).

**{¶82}** Before we reach the merits of appellant's first assignment of error, we note that a ruling on a motion for summary judgment generally cannot be reversed by a reviewing court if the case has subsequently gone to trial on the same factual issues raised therein. *Continental Ins. Co. v. Whittington*, 71 Ohio St.3d 150, 156, 642 N.E.2d 615

(1994). "This rule prevents the fundamental unfairness of overturning a fully litigated verdict in favor of a judgment rendered in a summary proceeding based on a curtailed presentation of evidence." *Chieffo v. YSD Industries, Inc.*, 157 Ohio App.3d 182, 2004-Ohio-2481, 809 N.E.2d 1186, ¶ 24 (7th Dist.), citing *Continental* at *id*.

{¶83} "Any error by a trial court in denying a motion for summary judgment is rendered moot or harmless if a subsequent trial on the same issues raised in the motion demonstrates that there were genuine issues of material fact supporting a judgment in favor of the party against whom the motion was made." *Continental* at syllabus. However, when the trial court errs in denying summary judgment on an issue of law, the error is not rendered harmless by a subsequent trial on the merits. *Wargo v. Susan White Anesthesia, Inc.*, 8th Dist. Cuyahoga No. 96410, 2011-Ohio-6271, ¶ 10, citing *Continental* at 158. Accordingly, regardless of the movant's lack of success at trial, we may review a denial of a motion for summary judgment involving a pure question of law. *Id*. Furthermore, we may also review a denial of summary judgment if the issues raised at the summary judgment stage were not litigated at trial. *Continental* at 159.

{¶84} In the instant matter, the record reflects that the issues raised in appellant's motion for summary judgment were subsequently raised and contested during trial. However, appellant raised two issues of law in his summary judgment motion: (1) whether the common-law qualified privilege applied and shielded him from liability; and (2) whether he was immune from liability pursuant to R.C. 5101.61(D) based on his mandatory duty to report instances of abuse or neglect of developmentally disabled

individuals.

{¶85} Whether or not a defamatory statement is privileged is a question of law. *Surace v. Wuliger*, 25 Ohio St.3d 229, 231, 495 N.E.2d 939 (1986). However, in determining whether a person is entitled to immunity, the trial court must consider specific facts. *Morway v. Ohio Bur. of Workers' Comp.*, 10th Dist. Franklin No. 04AP-1323, 2005-Ohio-5701, ¶ 17, citing *Lowry v. Ohio State Hwy. Patrol*, 10th Dist. Franklin No. 96API07-835, 1997 Ohio App. LEXIS 679, 14 (Feb. 27, 1997).

{¶86} First, appellant argued in his summary judgment motion that the common-law qualified privilege applied and shielded him from liability on Swoope's defamation claim because he filed the complaint in good faith, his statements were limited in scope and publicized in a proper manner to proper parties only. Furthermore, appellant maintained that he had a duty to file the complaint — both to S.J. and as an employee of the Ohio Department of Developmental Disabilities. Appellant contended that the publication of his statement regarding Swoope furthered a public interest — reporting neglect on behalf of individuals who are unable to raise these concerns themselves.

{¶87} Second, appellant argued that he had a "mandatory statutory duty" under R.C. 5123.61 to report his concern that Swoope was neglecting S.J. Appellant asserted that he filed the complaint because he believed Swoope's conduct constituted neglect of S.J. and that her conduct could lead to dire consequences. Based on his mandatory reporting duty, appellant contended that he was immune from liability under R.C.

5101.61(D).

{¶88} After reviewing the record, we find that when taking all reasonable inferences in favor of Swoope, there is sufficient evidence that appellant acted with actual malice in submitting the complaint.

{¶89} As noted above, appellant claimed that he drafted the neglect complaint in early 2014 — before the February 7, 2014 incident. However, rather than submitting the complaint at this time, appellant saved a draft of the complaint on his computer. Appellant explained the February 7, 2014 incident convinced him that he had a duty to report Swoope to the CCBDD, and that he submitted the complaint thereafter.

{¶90} We find this sequence of events to be puzzling. If, in fact, appellant believed that Swoope was neglecting S.J., that Swoope's conduct could lead to dire consequences, and that Swoope was jeopardizing S.J.'s life, it is unclear why appellant — who insisted that he had a duty to report Swoope's neglect — did not submit his complaint immediately. Instead, the record reflects that rather than submitting the complaint at the time he purportedly drafted it, appellant waited and only filed the complaint immediately after he and Swoope had a heated argument.

{¶91} When taking all reasonable inferences in Swoope's favor, the evidence could support a determination that appellant had a "high degree of awareness of [the statements'] probable falsity," *Garrison v. Louisiana*, 379 U.S. 64, 74, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964), or that appellant "entertained serious doubts as to the truth of his publication." *St. Amant v. Thompson*, 390 U.S. 727, 731, 88 S.Ct. 1323, 20 L.Ed.2d 262

(1968).

{¶92} In the complaint, appellant alleged that Swoope was violating Hill's rules regarding cooking, having guests at the home, and cell phone use. However, as noted above, Hill's statements during Kresevic's interview contradicted appellant's allegations. Hill reported to Kresevic that the nurses were allowed to use the stove and microwave, and that Swoope had always been professional in her home.

{¶93} Appellant further alleged in the complaint that Swoope was not providing adequate care for S.J., leaving S.J. unattended and uncared for on many occasions, and jeopardizing S.J.'s life. However, as noted above, Hill reported to Kresevic that she had never questioned anything about the care that S.J. received, the care has always been the best, and that she believes S.J. is alive because of the wonderful care that the nurses have provided. Hill further reported that Swoope did not neglect S.J.

{¶94} Hill provided conflicting statements regarding the nature of the relationship between appellant and Swoope. In Hill's April 2, 2015 affidavit, which appellant submitted in support of his motion for summary judgment, Hill stated that appellant does not dislike left-handed people. However, during her February 2014 interview with Kresevic, Hill stated that she believes there is a "cultural" issue between appellant and Swoope based on appellant's cultural belief that left-handed people are evil. Kresevic's report provides, in relevant part, "[Hill] reported that [appellant] had a personal issue with [Swoope] that resulted in his report of this incident."

{¶95} Based upon our independent review of the record, we find that when taking

all reasonable inferences in favor of Swoope, there is sufficient evidence that appellant acted with actual malice in submitting the complaint. Accordingly, appellant was not entitled to summary judgment based on either the common-law qualified privilege or the statutory privilege provided in R.C. 5101.61(D).

{¶96} Appellant's first assignment of error is overruled.

### III. Conclusion

{¶97} After thoroughly reviewing the record, we find that the trial court did not abuse its discretion by admitting Kresevic's report; the jury's verdict on Swoope's defamation claim is not against the manifest weight of the evidence; and the trial court properly denied appellant's motion for summary judgment.

{¶98} Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


FRANK D. CELEBREZZE, JR., JUDGE

MARY EILEEN KILBANE, P.J., and
MARY J. BOYLE, J., CONCUR